653 P.2d 1185
Harry KATSEANES,
Plaintiff-Respondent,

v.

John YAMAGATA, Defendant-Appellant.

No. 14008.

Court of Appeals of Idaho.

Nov. 16, 1982.

R.M. Whittier of Whittier & Souza, Pocatello, for defendant-appellant.

H. William Furchner of Furchner & Hennebold, Blackfoot, for plaintiff-respondent.

WALTERS, Chief Judge.

Harry Katseanes instituted this action to collect the balance due on a promissory note after John Yamagata, the promisor, failed to make a full payment on the note. The promissory note was given as consideration for an assignment of a lease. In this appeal, we address the question whether the trial court properly excluded testimony of an alleged oral agreement made prior to execution of the assignment of lease and the promissory note. The trial court held the evidence inadmissible pursuant to the parol evidence rule. It is our determination that proof of the oral agreement is not precluded by the parol evidence rule. Consequently, we hold the trial court erred in excluding testimony of the alleged agreement. We *reverse* and *remand* for new trial.

In 1968, John Yamagata gave Harry Katseanes a promissory note in return for a written assignment of Katseanes' leasehold interest in 3,300 acres of farmland and grazing land on the Fort Hall Indian Reservation, leased to Katseanes by the United States Department of the Interior. Although neither Katseanes nor Yamagata had any control over land adjacent to the leased premises, Katseanes allegedly promised Yamagata that should livestock ever be grazed on the adjacent land, then he would provide a fence to restrain the livestock and to protect Yamagata's crops. This promise to build a fence allegedly was made prior to the execution of the note and lease agreement. It was never reduced to writing.

In 1976, cattle were grazed on the adjacent land. The cattle entered Yamagata's farmland and allegedly damaged or destroyed growing crops. Yamagata demanded that Katseanes provide a fence to restrain the livestock. Katseanes refused. When Yamagata's 1977 installment payment on the promissory note became due, he gave the full amount to his attorney with directions to tender it to Katseanes only if the cost of fencing was deducted as an offset.

Katseanes refused to accept payment with an offset. He instituted this suit for collection of the entire balance due on the promissory note. Yamagata asserted as a defense that he had been induced to enter into the agreement with Katseanes by a representation that no cattle would ever be grazed on the land adjacent to the leased premises, and by the assurance that if cattle were grazed on the adjacent land, then Katseanes would arrange to protect Yamagata's farm crops. Yamagata also counterclaimed against Katseanes, alleging fraud and seeking damages due to crop loss caused by the cattle and for the additional cost of building a fence to restrain the livestock.

During the trial, Yamagata attempted to prove the promise to fence the premises. The trial court ruled that the offered testimony would tend to prove an oral agreement inconsistent with the written agreement of the parties. The court excluded the testimony under the parol evidence rule.

Yamagata presented evidence, by way of an offer of proof, of Katseanes' alleged promise. The evidence came from the testimony of Yamagata and of a witness named Don Collaer. According to this testimony, the negotiations for assignment of Katseanes' lease to Yamagata occurred in the office of Collaer, a fertilizer dealer who apparently had some involvement in the discussions. Collaer testified that Katseanes had been asking nearly twice as much for his lease as the "going price" at the time for similar land. Collaer said he informed the parties that Katseanes was asking too much. The adjacent ground was range land, and the leased premises were not protected from ranging livestock. Collaer testified that Katseanes guaranteed that the adjacent land, which was used as sheep range at that time, would never have to be fenced. Collaer stated that Katseanes promised that he would pay for fencing, if it ever became necessary. With this guarantee, Yamagata agreed to enter the lease assignment agreement.

Yamagata's testimony paralleled that of Collaer. The lease under negotiation for assignment provided that the lessee was responsible for protection of his property

and crops from any trespass damage caused by livestock. The lease also provided that fencing of the leased premises was the lessee's obligation. Yamagata felt that Katseanes was asking more for the lease assignment than the lease was worth in light of this provision in the lease and the fact that the premises were not fenced. He and Collaer tried to get Katseanes to lower his asking price. According to Yamagata, Katseanes refused to reduce the price; but in view of the assurances given, Yamagata agreed to take an assignment of the lease and to give Katseanes a promissory note for the price asked.

The agreement between the parties, insofar as it was reduced to writing, consisted of the lease, the lease assignment, and the promissory note. The lease described the property and established the term of the lease. The lease assignment was made in a written form provided by the United States Department of the Interior. Both Katseanes and Yamagata signed. The premises were described, but a blank space on the form, for insertion of the consideration received for the assignment, was not filled in. The lease subject to the assignment was specifically identified in the form.

The promissory note was a standard form, apparently furnished by Collaer. It specified the amount due, the terms of payment, and named the parties to the note. The consideration for the note was expressed by the mere recital, "[f]or value received." No mention was made of the lease assignment or the promise to build a fence if the need arose. Nevertheless, the trial court found that a complete contract was evidenced by the promissory note, the lease, and the assignment of the lease. Yamagata's offer of proof of the alleged promise to fence the land was rejected.

■ Under Idaho's parol evidence rule, where preliminary negotiations are consummated by written agreement, the writing supercedes all previous understandings and the intent of the parties must be ascertained from the writing. *Nuquist v. Bauscher*, 71 Idaho 89, 94, 227 P.2d 83, 86 (1951). This rule, however, applies only when the integrated character of the writing is established. Whether a particular subject of negotiation is embodied in the writing depends on the intent of the parties, revealed by their conduct and language, and by the surrounding circumstances. *Nysingh v. Warren*, 94 Idaho 384, 385, 488 P.2d 355, 356 (1971). The mere existence of a document does not establish integration. *Id.* A "merger" clause in a written agreement is one means of proving the integrated character of a writing. *Tapper Chevrolet Co. v. Hansen*, 95 Idaho 436, 510 P.2d 1091 (1973).

■ In this case, three separate but interrelated documents evidenced the contract agreement between the parties. There is no merger clause in either the promissory note or the assignment of lease—the only documents signed by Yamagata. In fact, there is no indication that the parties intended the writings to supercede all prior negotiations and agreements. Moreover, the alleged promise to fence the land was not inconsistent with assignment of the underlying lease. The lease, as noted above, imposed upon lessees of land from the Department of the Interior the burden of fencing out livestock. However, we do not perceive this provision to be inconsistent with an agreement between a lessee and his assignee allocating this burden between them. We hold the trial court erred in excluding the testimony of Katseanes' alleged oral promise on the basis of the parol evidence rule.

The sole basis for this appeal is the parol evidence ruling and we have been requested to address that issue only. Other issues that may arise at a new trial have not been briefed or presented on this appeal and we will not address them *sua sponte*.

The judgment is reversed and the matter is remanded for a new trial. Costs to appellant. No attorney fees.

SWANSTROM and BURNETT, JJ., concur.