716 P.2d 1376

**JOHNSON CATTLE COMPANY, INC., Plaintiff-Appellant-Cross Respondent,**

v.

**IDAHO FIRST NATIONAL BANK, a National Banking Corporation, Defendant-Respondent-Cross Appellant.**

No. 15968.

Court of Appeals of Idaho.

April 1, 1986.

---

Gerald L. Weston, Gigray, Miller, Downen & Weston, Caldwell, for plaintiff-appellant-cross respondent.

Terrence R. White, White, Ahrens, Peterson & Perry, Nampa, for defendant-respondent-cross appellant.

BURNETT, Judge.

This appeal presents issues concerning the parol evidence rule and the statute of frauds. The case focuses upon an oral contract allegedly formed by an exchange of promises by the Johnson Cattle Company and the Idaho First National Bank. Johnson Cattle claims that the bank agreed to lend money to a tenant farmer on land that Johnson Cattle owned. In return, Johnson Cattle subordinated its security interest in the tenant's crops, giving the bank a priority position. The tenant later defaulted in paying rent. Johnson Cattle sued the bank, claiming that loan funds had not been disbursed to the tenant as agreed. The district court entered summary judgment for the bank on alternate theories—that the alleged oral agreement could not be proved under the parol evidence rule, or that such an agreement could not be enforced under the statute of frauds. For reasons explained below, we vacate the judgment.

The background facts are uncontroverted. In 1982 Johnson Cattle leased 440 acres of agricultural land to a tenant known as Vogt Farms. The lease provided for annual cash rent of $70,000. The tenant was to pay $10,500 upon executing the lease, $30,000 on February 1, and the balance of $29,500 on April 1. To protect against default, Johnson Cattle obtained a

security interest in crops planted that spring.

The tenant received its operating money from the Idaho First National Bank's branch office at Marsing. The tenant applied for an operating loan and received interim advances of approximately $10,500 and $42,000. With these funds the tenant paid $10,500 when the lease was signed and an additional $42,000 on February 16. The latter sum covered the $30,000 rent installment as well as $12,000 of the final $29,500 installment, leaving $17,500 to be paid. However, on or about February 25, the bank's loan committee in Boise disapproved the tenant's loan application. Prospects for continued performance of the lease grew dim.

At some point during or following these events, Clarence Johnson, an officer of Johnson Cattle, spoke with the bank's branch manager on the telephone. The date and contents of that conversation are disputed. In a deposition, Johnson stated that the conversation occurred between March 8 and March 11, after the $10,500 and $42,000 payments had been made. He said the branch manager was willing to continue financing the tenant's farm operations, on a budget that would include the rental balance, if Johnson Cattle agreed to relinquish its prior secured position. Johnson testified:

> I said that we wasn't releasing the security agreement 'til we received our cash money. [The branch manager] said that we had the UCCI [sic] that covered [the tenant's] property and some other farm they had besides ours and he couldn't release any budget money to them until I released that.
>
> I asked him if we'll get our money and he said that wasn't any problem. Everything was all set. We would receive our money. It was all in the budget but for him to release the money so they could plant the crops they needed to have me release that security agreement.
>
> So I went ahead and told [the branch manager] we'd go ahead and release and

when would we receive our money. He said there wasn't no problem, we would receive our money. And so we went ahead and released the security agreement.

In an opposing deposition, the bank manager stated that the telephone conversation had occurred before February 16, when the $42,000 advance was made. He asserted that Johnson Cattle subordinated its prior security interest to obtain the $42,000 and that Johnson Cattle was told the $17,500 rental balance "wouldn't be paid 'til the crops were in."

The record discloses that Johnson Cattle signed a "Subordination Agreement" and delivered it to the bank. The instrument is dated March 11. Its operative text reads as follows:

> TO: IDAHO FIRST NATIONAL BANK, MARSING BRANCH, MARSING, IDAHO
>
> In consideration of your making a loan to [the tenant], Johnson Cattle Company, Inc., hereby agrees to subordinate its security interest to your security interest as to the 1982 crops to be grown on the following described real property....

The bank subsequently furnished additional money to the tenant, but the record does not specifically show that the disbursements were for farming operations on the Johnson Cattle premises. The tenant farmed, and received loans from the bank, on several other leased properties as well. Upon this state of the record, and mindful that this appeal comes to us from a summary judgment, we will accept as true Johnson Cattle's allegation that the bank did not disburse funds budgeted for the tenant to pay the $17,500 rental balance. Neither did the tenant pay the balance from any other source. This lawsuit followed.

 We first consider the bank's contention that, regardless of what was said during the telephone conversation, the parol evidence rule would bar proof of any oral agreement. The parol evidence rule prohibits using extrinsic evidence of prior

or contemporaneous negotiations to contradict an integrated written contract. J. CALAMARI, J. PERILLO, THE LAW OF CONTRACTS § 3–2 (2d ed. 1977). Accordingly, "where preliminary negotiations are consummated by written agreement, the writing supersedes all previous understandings and the intent of the parties must be ascertained from the writing." *Katseanes v. Yamagata,* 103 Idaho 773, 775, 653 P.2d 1185, 1187 (Ct.App.1982), *quoting Nuquist v. Bauscher,* 71 Idaho 89, 94, 227 P.2d 83, 86 (1951). So long as the language of the contract is unambiguous, extrinsic evidence is not admissible to prove the intent of the parties. *Jones v. Mountain States Telephone and Telegraph Co.,* 105 Idaho 520, 670 P.2d 1305 (Ct.App.1983).

■ The bank would have us treat the written "Subordination Agreement," which contains no explicit reference to future rental payments, as a fully integrated, unambiguous expression of the parties' intent. We do not agree. The "Subordination Agreement" simply recites that "[i]n consideration of your making a loan ... Johnson Cattle Co., Inc., hereby agrees to subordinate its security interest...." The meaning of the phrase "making a loan" is unclear. Does it refer, as the bank contends, to the $42,000 disbursed on February 16? Or does it mean, as Johnson Cattle contends, additional money budgeted for farm operations including the rental balance of $17,500? Where, as here, the language of an instrument is reasonably subject to two differing interpretations, the instrument is ambiguous. *E.g., Ferrel v. Allstate Insurance Co.,* 106 Idaho 696, 682 P.2d 649 (Ct.App.1984). Extrinsic evidence is admissible to prove the underlying intent of the parties. *E.g., Werry v. Philips Petroleum Co.,* 97 Idaho 130, 540 P.2d 792 (1975). The parol evidence rule is inapplicable.

■ Accordingly, we hold that evidence of any oral agreement reached during the telephone conversation would be admissible at trial to determine the meaning and full import of the "Subordination Agreement." In light of this holding, we need not decide whether other exceptions to the parol evidence rule—such as fraud or a collateral agreement—also apply.

■ We now turn to the bank's argument that even if evidence of an oral agreement were admissible, such an agreement could not be enforced under the statute of frauds. Specifically, the bank maintains that the agreement would violate I.C. § 9–505(2), which provides that all agreements "to answer for the debt, default or miscarriage of another" must be in writing. We believe this argument misconstrues the oral agreement alleged by Johnson Cattle. As we read Johnson Cattle's complaint, and as we understand counsel's explanation on appeal, Johnson Cattle has not contended that the bank agreed to guarantee the rent or to pay the rent directly. Rather, the contention is that in return for subordination of Johnson Cattle's security interest in the crops, the bank agreed to lend the tenant additional money pursuant to a farm operating budget that would include the rental balance. With this understanding, we hold that the alleged oral agreement would not contravene I.C. § 9–505(2). Our holding makes it unnecessary to determine whether this case might fall within the purview of I.C. § 9–506(3), which allows enforcement of an oral promise to answer for the debt of another if the promisor obtains a direct benefit.

We conclude that summary judgment was improperly entered. The judgment is vacated and the case is remanded for further proceedings consistent with this opinion. The district court's failure to award attorney fees below—an issue raised by the bank in a cross-appeal—is mooted. Costs on appeal to the appellant, Johnson Cattle. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.