# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 33139

| | | |
|---|---|---|
| COMMERCIAL VENTURES, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE REX M. & LYNN LEA FAMILY | ) | |
| TRUST, LYNN LEA, Trustee, LYNN LEA, | ) | |
| an individual, LEA ELECTRIC, INC., a | ) | Boise, December 2007 |
| dissolved Idaho corporation, | ) | |
| | ) | 2008 Opinion No. 2 |
| Defendants-Third Party Plaintiffs- | ) | |
| Respondents, | ) | Filed: January 7, 2008 |
| | ) | |
| and | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WILLIAM R. BARNES, GARRET JAMES | ) | |
| LONGSTREET, FR&L, INC., an Idaho | ) | |
| corporation, d/b/a CENTURY 21 1ST | ) | |
| PLACE REALTY, and ERIC A. WILDE, | ) | |
| | ) | |
| Defendants-Third Party Defendants- | ) | |
| Respondents. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

District court decision, affirmed.

Perry Law, P.C., Boise, for appellant. Mark Bradford Perry argued.

Houst Law Office, Boise, for respondent Lea Family Trust. Henry Ernest Houst, Jr. argued.

Stephen James Lord, Boise, argued for respondents Barnes, Longstreet and FR&L.

Brassey, Wetherell, Crawford & Garrett, Boise, for respondent Wilde. John Nick Crawford argued.

---

BURDICK, Justice

Appellant Commercial Ventures, Inc. (Commercial) appeals from the district court's grant of summary judgment to Respondents, the district court's denial of Commercial's motion to reconsider, the district court's denial of Commercial's motion to amend its complaint, and the district court's award of attorney fees and costs to Respondents. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After her husband's death, on July 8, 1998, Respondent Lynn Lea (Lynn) executed a Listing Agreement with Commercial, dba Arthur Berry & Co. The Listing Agreement covered the possible sale of Lea Electric, Inc.'s (Lea Electric) business assets and the real property associated with Lea Electric. The business assets were owned by Respondent Lea Electric, and the real property was owned by Respondent The Rex M. and Lynn Lea Family Trust (the Trust). Lynn is the sole shareholder of Lea Electric and the sole trustee of the Trust.

David Lamarque contacted Arthur Berry, the broker for the transaction, about purchasing commercial real estate. Berry told Lamarque that Lea Electric was for sale. On July 27, 1998, Lamarque entered into two agreements: a Business Assets Purchase Agreement (BAPA), regarding the business assets of Lea Electric, and a Lease with Purchase Option (LPO), regarding the real estate. The BAPA covered the business assets of Lea Electric and was executed by Lamarque and Lea Electric; it contained no termination date. The LPO covered the real property and was entered into by Lamarque and the Trust. By its terms, the LPO expired on July 26 or 27, 2003; it also contained a formula for setting the purchase price.

In 2003 Lamarque decided to purchase the property, but wanted to pay only its current appraised value ($735,000) rather than the option purchase price ($780,000). He then formed Lamarque Properties, LLC. Lynn, on behalf of the Trust, agreed to the appraised value as a fair purchase price. Prior to the expiration of the LPO, Lynn became acquainted with Respondent Eric A. Wilde. Wilde worked as a real estate agent with Century 21 First Place Realty, and his broker was William R. Barnes. Also, prior to the expiration of the LPO, Barnes contacted Lamarque and asked him to defer the purchase of the property until the expiration of the LPO. After the expiration of the LPO, Lynn entered into a commission agreement with Barnes. The commission agreement provided for a commission lower than either the Listing Agreement or the BAPA. Also after the expiration of the LPO, Lamarque Properties, LLC and the Trust entered into a commercial real estate purchase and sale agreement. The sale of the property

closed on July 31, 2003, and Barnes, Wilde and Mike Gamblin, another broker associated with Wilde, received a portion of the commission.

After learning of the sale sometime in April or May of 2004, Commercial filed a complaint seeking a 7% commission on the sale of the real property against Respondents Lynn, the Trust and Lea Electric (collectively "Lea Respondents"). Commercial later amended its complaint to include claims for: breach of the duty of good faith and fair dealing against the Lea Respondents; unfair competition against all the Respondents; tortious interference with contract and tortious interference with business relationships against Respondents William R. Barnes, Garrett James Longstreet and FR&L, Inc. (collectively "Century 21"), Wilde and Gamblin; statutory interference with real estate brokerage agreement against all Respondents; unjust enrichment against all Respondents, and; constructive fraud against all Respondents. Commercial then filed a motion for partial summary judgment and the Respondents filed motions for summary judgment. The district court granted the Respondents' motions and denied Commercial's motion. Commercial moved for reconsideration, which the district court denied. After some Respondents moved for costs and attorney fees, the district court awarded costs as a matter of right to the Lea Respondents, Century 21 and Wilde. It also awarded the Lea Respondents attorney fees. Commercial now appeals the grant of summary judgment to the Respondents, the denial of its motions to reconsider and to amend its complaint, and the award of costs and attorney fees.

## II. STANDARDS OF REVIEW

When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. St. Luke's Regl. Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id.*

"The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review." *Est. of Becker v. Callahan*, 140 Idaho

3

522, 527, 96 P.3d 623, 628 (2004) (quoting *Thomas v. Med. Ctr. Phys., P.A.*, 138 Idaho 200, 210, 61 P.3d 557, 567 (2002)). Likewise, the decision to grant or deny a motion for reconsideration is reviewed for an abuse of discretion. *Jordan v. Beeks*, 135 Idaho 586, 592, 21 P.3d 908, 914 (2001). Abuse of discretion is determined by a three part test which asks whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004).

### III. ANALYSIS

Commercial argues that it is entitled to a commission for the sale of the real property to Lamarque. It also argues that the district court erred in dismissing its tort claims on summary judgment, in not allowing it to amend its pleadings to include a claim for punitive damages, and in awarding costs and fees to the Respondents below. We will turn first to the issue of whether Commercial is entitled to a commission.

**A. Commission**

Commercial argues that the sale to Lamarque Properties, LLC was a closing in accordance with the terms of the Listing Agreement. In the alternative, Commercial also argues that it is due a commission under the terms of the BAPA and LPO, as these evidence the parties' intentions to pay Commercial a commission.

Prior to 1993, to earn a commission a real estate broker had only to procure a buyer who was ready, willing and able to purchase on terms acceptable to the seller. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005). However, this Court expressly adopted the rule from *Ellsworth Dobbs, Inc. v. Johnson*, 236 A.2d 843 (N.J. 1967). *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 259-60, 846 P.2d 904, 910-11 (1993). Now, in addition to procuring a ready, willing and able buyer, the buyer must enter into a binding contract with the owner and the buyer must complete the transaction by closing title in accordance with the contract terms in order for the broker to earn a commission. *Id*. at 260, 846 P.2d at 911.

  1. Listing Agreement

Commercial argues that it is entitled to a commission under the Listing Agreement. It argues the Listing Agreement does not require that a sale had to be "*consummated* within 90

4

days, only that a 'transaction' had to be *procured* within 90 days." This, according to Commercial, is exactly what happened when Lamarque leased and then purchased the property; the substance and outcome of the transaction with Lamarque resulted in an effective change in full ownership, and thus, the district court erred in concluding the Listing Agreement did not provide Commercial a commission.

The district court determined that Commercial was not entitled to a commission based on the language of the Listing Agreement. On appeal, Commercial argues first that the Listing Agreement provides for a commission on the sale of the real property to Lamarque.[1] The Lea Respondents, Century 21 and Wilde all contend that the Listing Agreement expired unfulfilled, and therefore, Commercial cannot use the Listing Agreement as a basis for a commission from that sale.

> When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. An unambiguous contract will be given its plain meaning. The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole. If a contract is found ambiguous, its interpretation is a question of fact. Whether a contract is ambiguous is a question of law. A contract is ambiguous if it is reasonably subject to conflicting interpretations.

*Bakker*, 141 Idaho at 190, 108 P.3d at 337 (quoting *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185-86, 75 P.3d 743, 746-47 (2003) (internal citations omitted)).

The Listing Agreement is titled as "Total Business Assets (Except Cash) Listing for: Lea Electric." Then after the "Real Property Included in Sale" query, both "Yes" and "No" are checked. It also provides, in pertinent part:

> [Lea Electric and the Trust] (Owner, as a Corporation and individual stockholder) provide [Commercial], hereinafter referred to as (Broker), the sole and exclusive right to sell, exchange, procure management or other transaction which causes an effective change in full ownership hereinafter referred to as (Disposition), of the above property/business, assets, or stock, in their entirety (including blue sky and goodwill), hereinafter referred to as (Business), for a period of 90 days from this date, July 8/98 to Oct/8/98.[2]

* * *

---

[1] In the alternative, Commercial argues that the Listing Agreement is ambiguous because "it can reasonably be construed as providing for a commission" to Commercial for the sale of the property. However, beyond this bare assertion, Commercial offers no argument as to how the words of the Listing Agreement can be so construed. Additionally, as discussed below, the terms of the Listing Agreement are clear and unambiguous.

[2] These dates were handwritten in blanks on the form.

Owner agrees to pay Broker a commission . . . regardless of the amount, terms and conditions accepted by the Owner upon disposition of the business in its entirety during the period of this agreement or through the efforts of Broker as noted below. If the real estate is leased or subleased in connection with a sale of the business in its entirety, a commission of seven percent (7%) of the total rents shall be paid.

\* \* \*

OWNER UNDERSTANDS THAT AS A SOLE AND EXCLUSIVE LISTING THE ABOVE COMMISSION(S) SHALL BE PAID TO BROKER UPON DISPOSITION OF THE BUSINESS IN ITS ENTIRETY DURING THE LISTING PERIOD, OR AS NOTED BELOW, WHETHER MADE BY BROKER OR ANYONE ELSE.

\* \* \*

Owner agrees that if within 180 days after the listing period ends, a disposition of the business in its entirety occurs to any person which whom negotiations occurred during the listing period or who was referred to business through the efforts of the Broker, then the above commission(s) shall be due Broker. (emphasis in original).

Additionally, in the signature portion of the Listing Agreement, Lynn signed on the "Owner as Individual" line, but not on the "Real Estate Owner" line.

The Listing Agreement does not provide Commercial the commission it seeks. Commercial asserts that this document contemplates the payment of a commission if Commercial "procures" a transaction, which eventually leads to a sale, within the time limits set out in the agreement. Commercial supports its argument by quoting portions of the first clause of the Listing Agreement, but the clause as quoted by Commercial has been so altered as to change the meaning of the language. Commercial "quotes" the Listing Agreement as providing:

Lynn Lea Family Trust . . . provide Commercial Ventures, Inc. . . . the sole . . . right to . . . procure [a] transaction which causes an effective change in full ownership . . . of the above property. . . . Owner agrees to pay Broker a commission equal to . . . ten percent (10%) of the gross sale price. . . .

This Court cannot accept the strained and unsupported argument. Instead, we must examine the Listing Agreement as a whole. *See Bakker*, 141 Idaho at 190, 108 P.3d at 337. Looking at every word of the clear and unambiguous Listing Agreement, Commercial was due a commission on the sale of the property only if there was an effective change of full ownership

6

within the time limits set by the agreement.[3]  Indeed, the Listing Agreement defines disposition as a "change in full ownership" and then thrice uses the term "in its entirety" when referring to a disposition.  Even under the interpretation most favorable to Commercial, the terms of the Listing Agreement expired one hundred eighty days after October 8, 1998.  The Trust did not sell the real property to Lamarque Properties, LLC until 2003, well outside of the time limits set by the Listing Agreement.  Therefore, we hold that the Listing Agreement cannot serve as the basis for a commission claim by Commercial, as the sale of the property was not completed within the terms of the contract.  *See Margaret H. Wayne Trust*, 123 Idaho at 260, 846 P.2d at 911.

Since the terms of the Listing Agreement do not provide for a commission, it is not necessary for the Court to determine whether Lynn's signature on the "owner" line, but not the "real estate owner" line, is sufficient to satisfy the statue of frauds, I.C. § 9-508.  Additionally, as the terms of the Listing Agreement are not ambiguous, the Court need not consider Commercial's argument that the BAPA and LPO should be used as evidence to determine the intent of the parties to the Listing Agreement.  *See Johnson Cattle Co. v. Idaho First Natl. Bank*, 110 Idaho 604, 607, 716 P.2d 1376, 1379 (Ct. App. 1986) ("So long as the language of the contract is unambiguous, extrinsic evidence is not admissible to prove the intent of the parties." (citing *Jones v. Mt. Sts. Tel. & Tel. Co.*, 105 Idaho 520, 670 P.2d 1305 (Ct. App. 1983)).

2. BAPA

Commercial next argues that it is entitled to a commission under the terms of the BAPA. The BAPA provides:

> [Commercial] has acted as broker for this transaction.  Seller [Lea Electric] agrees to pay said broker a commission as per agreement, in cash at closing.  A commission of 10% shall be paid on the purchase consideration for the business personal property assets in the amount of $17,000.  A commission of 6% of the lease payments received by Seller shall be paid on a monthly basis as received by Seller from Buyer.  In the event of the purchase by Buyer of the Premises, a commission of 7% of the purchase price shall be paid to broker by Seller.  Seller hereby authorizes payment to the broker of the $17,000 commission pursuant to the terms of this Agreement.

It was signed by Lynn as the president of Lea Electric, the seller.  The Trust, the owner of the real property, did not sign the BAPA and consented only to paragraphs 9 and 17 of the

---

[3] Although it is unclear whether the Listing Agreement includes the real property, as both the "Yes" and "No" options were checked this Court must assume that it was included as all facts must be construed in favor of Commercial.

7

BAPA; Lynn personally consented to paragraph 17.[4]  Based on Idaho's statute of frauds, I.C. §

9-508, the district court determined that the BAPA could not be enforced against the Trust, the

owner of the real property, as the Trust had not signed the BAPA.

> Idaho law provides a statute of frauds for real estate commissions:

> No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative.

I.C. § 9-508.

Additionally, a brokerage contract requires the signature of both the owner and the

broker, as it is not a unilateral contract the broker can accept by full performance.  *C. Forsman*

*Real Est. Co. v. Hatch*, 97 Idaho 511, 515, 547 P.2d 1116, 1120 (1976).

> The primary purpose of I.C. § 9-508 is to prevent fraudulent or unfounded claims of brokers.  This particular portion of our code relates entirely to statutes of frauds and has as its objective avoiding disputes as to whether or not an agreement in fact exists, the amount of a commission and the exclusive or non-exclusive terms of a listing agreement.

*Id.* at 515, 547 P.2d at 1120.

No agent of Commercial signed the BAPA; therefore, it cannot act as a brokerage

agreement.  *See id.*  Additionally, Commercial implicitly acknowledges that the BAPA does not

meet the requirements of the statute of frauds because it was not signed by a trustee of the Trust.

Commercial argues, however, that the purpose of enforcing the statute of frauds is

satisfied because the contract was fully performed and the BAPA memorializes past services.

---

[4] Paragraph 9 provides:

> Premises.  It is acknowledged that the Seller leases the premises upon which the Business is operated (the "Premises") from The Rex M. Lea and Lynn Lea Family Trust (the "Landlord").  It is understood and agreed that the Buyer desires to negotiate a lease of the Premises with the Landlord for a five-year term, which Lease will include an option for the Buyer to purchase the Premises at its appraised value.  The Buyer's obligation to complete the purchase of the Business Assets is expressly conditioned upon the Landlord's agreement to enter into such a five-year lease of the Premises with such option to purchase.

Paragraph 17 provides:

> No Assumption of Liabilities.  It is understood by Seller and Buyer that Buyer has not agreed, and does not agree, to assume any liability or obligation of Seller, whether with respect to the Business Assets or the Business or otherwise, unless expressly set forth in writing signed by the parties.

Since that is not the case, we hold that Commercial is not entitled to use this exception to circumvent the protections of I.C. § 9-508.

The BAPA acknowledges that Lamarque and the Trust executed the LPO and later provides that Commercial "has acted as broker for this transaction." The BAPA also provides: "In the event of the purchase by Buyer of the Premises, a commission of 7% of the purchase price shall be paid to broker by Seller."

The LPO provides:

> Option. Notwithstanding any other provisions of this Lease, the parties hereto agree that Tenant [Lamarque] is hereby granted by Landlord [the Trust] an option to purchase the Premises. This Option is made and given in consideration of the promises and covenants made and given by Tenant in this Lease.
>
> This Option shall commence on July 27, 1998, and shall continue during the terms of this Lease. Tenant may exercise this Option at any time during said period by giving notice as provided in Paragraph XX, above. . . .

In turn, paragraph XX of the LPO provides that any notices given under the terms of the LPO must be in writing and provides delivery addresses.

Examining the BAPA and LPO together, it becomes clear that at most, the BAPA provides a commission if the terms of the LPO are met. However, Lamarque never exercised his option as he never provided the Trust with written notice of his intent to purchase the premises. Therefore, we hold that Commercial is not entitled to a commission.

Finally, Commercial also argues that Lea Electric cannot assert the statute of frauds because the BAPA memorializes Lea Electric's promise to pay it a commission and the statute of frauds does not apply to a non-owner who seeks the sale of the property. However, these contentions were not raised below, and "[i]t is well settled that we will not address issues not raised below and presented for the first time on appeal." *Fairway Dev. Co. v. Petersen, Moss, Olsen, Meacham & Carr*, 124 Idaho 866, 870, 865 P.2d 957, 961 (1993).

**B. Mutual Mistake**

On appeal, Commercial argues that the district court erred in refusing to consider its mutual mistake argument when the court decided its motion to reconsider. It asserts that mutual mistake is not an element of its contract claims, but a defense to raising the statute of frauds; therefore, Commercial argues, such a claim would not have been at issue until after the district court granted the defendants summary judgment.

9

In this instance, the record does not support Commercial's argument. It did not argue below that mutual mistake was a bar to raising the statute of frauds as a defense. Instead, in its memorandum in support of its motion for reconsideration, Commercial argues that there is a question of fact as to whether it is owed a 10% commission or a 7% commission and asserts also that it is entitled to a commission based on this mistake. It does not, however, argue that mistake of fact is a bar to raising the statute of frauds.

The decision to grant or deny a motion for reconsideration is reviewed for an abuse of discretion. *Jordan v. Beeks*, 135 Idaho at 592, 21 P.3d at 914. Abuse of discretion is determined by a three part test which asks whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Sun Valley Potato Growers, Inc.*, 139 Idaho at 765, 86 P.3d 479.

When deciding Commercial's motion for reconsideration, the district court refused to consider Commercial's claim of mutual mistake as Commercial had not raised this claim until the motion for reconsideration, and the time for amending pleadings had passed. The Idaho Rules of Civil Procedure provide that a court shall enter a scheduling order limiting the time in which a party can amend the pleadings. I.R.C.P. 16(b)(1). The district court entered an order requiring all amendments to pleadings be completed by September 30, 2005. Commercial's pleadings do not disclose that it was seeking relief based on mutual mistake. However, in its memorandum in support of its motion for reconsideration, filed January 10, 2006, Commercial argues that there is a question of fact as to what percentage of the purchase price the commission was set at and whether the BAPA supplemented the Listing Agreement because their terms differed.

Here, the district court did not abuse its discretion. It examined Commercial's pleadings, the pretrial order and the argument in support of Commercial's motion to reconsider. It understood that Commercial was raising a claim for the first time and decided not to consider the claim. Such a decision was within the boundaries of the law and reached by the exercise of reason. Therefore, we affirm the district court's order.

10

## C. Good Faith and Fair Dealing

Commercial asserts that the district court erred in not reaching its breach of good faith and fair dealing claims. It argues that Lea Electric and the Trust had a duty of good faith and fair dealing to tell Commercial that Lamarque had exercised his option and that they breached this duty by "scheming" with the other defendants to deprive Commercial of its commission.

Every contract contains a duty of reasonable performance. *Steiner v. Ziegler-Tamura Ltd., Co*., 138 Idaho 238, 242, 61 P.3d 595, 599 (2002). Additionally, the covenant of good faith and fair dealing is implied by law and "requires the parties to perform, in good faith, the obligations required by their agreement[.]" *Id.* If a party to the contract violates, nullifies or significantly impairs any benefit of the contract, that party has violated this covenant. *Id.* Commercial claims that Lynn, Lea Electric and the Trust had a duty of good faith and fair dealing to notify it that Lamarque was exercising his option to purchase in the LPO.

However, as noted *supra*, under the plain language of the LPO Lamarque could only give notice to the Trust that he was exercising his option in writing. Such never happened. Thus, even assuming that there was a duty of good faith and fair dealing in the LPO to notify Commercial if Lamarque exercised his option, the fact that Lamarque never exercised his option means that Lynn, Lea Electric and the Trust could not have notified Commercial of such. Therefore, we hold that there was no breach of this duty.

## D. Tort Claims

Commercial next argues that the district court erred in implicitly ruling that an enforceable contract was necessary to support Commercial's claims for tortious interference with a contract and tortious interference with a prospective economic advantage. Century 21 argues that Commercial raises this argument for the first time on appeal, and fails to support its assertion that Lamarque would have performed except for the interference with any reference to the record. Wilde argues that Commercial failed to show how the interference was wrongful beyond the fact of the interference itself, as is required by Idaho law.

Tortious interference with contract has four elements: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach. *Idaho First Natl. Bank v. Bliss Valley Foods, Inc*., 121 Idaho 266, 283-84, 824 P.2d 841, 858-59 (1991). However, the contract need not be enforceable in adversary proceedings. *Id.* Tortious

11

interference with a prospective economic advantage has five elements: "(1) The existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself (i.e. that the defendant interfered for an improper purpose or improper means) and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Highland Enters., Inc. v. Barker*, 133 Idaho 330, 338, 986 P.2d 996, 1004 (1999). This tort requires a showing that the interference was wrongful beyond the fact of interference itself. *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 286, 92 P.3d 526, 536 (2004).

While the district court declined to decide these issues as it had determined the contracts did not provide for a commission, neither of these torts requires the existence of an enforceable contract. *Barlow v. Intl. Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974); *Highland Enters., Inc.*, 133 Idaho at 338, 986 P.2d at1004. However, we can affirm the district court's order granting summary judgment on alternate grounds. *See Martel v. Bulotti*, 138 Idaho 451, 454-55, 65 P.3d 192, 195-96 (2003) ("When a judgment on appeal reaches the correct conclusion, but employs reasoning contrary to that of this Court, we may affirm the judgment on alternate grounds."). Here, Commercial failed to raise a genuine issue of material fact as to each of its tort claims.

Turning first to tortious interference with a contract, Commercial has failed to raise a genuine issue of material fact as to the third element, intentional interference causing a breach of the contract. Commercial, as the party opposing summary judgment, had the burden of proving a genuine issue of material fact.[5] *Foster v. Traul*, 141 Idaho 890, 893, 120 P.3d 278, 281 (2005). However, there is no indication in the record that it demonstrated to the court below that there was an interference which caused a breach. Likewise, Commercial now asserts that "[b]ut for the intentional interferences by Wilde and Barnes et al., Lamarque would have performed and Commercial . . . would have been paid its commission." This assertion is not supported by a citation to the record or any specific allegations.

---

[5] Below, Commercial moved for partial summary judgment and the Respondents also moved for summary judgment. A review of Commercial's memorandum in support of its motion shows that it made no argument as to its tort claims. However, Wilde's memorandum in support of his motion for summary judgment shows that he argued there was no genuine issue of material fact as to Commercial's tort claims. Therefore, since Wilde moved

Turning now to the tortious interference with a prospective economic advantage, Commercial has failed to raise a genuine issue of material fact as to the fourth element, that the interference was wrongful by some measure beyond the fact of the interference itself. There is no indication in the record that Commercial demonstrated that the interference was wrongful. On appeal, Commercial asserts that the Respondents schemed to deprive it of its commission, but fails to provide any citation to the record supporting this assertion.

Therefore, since Commercial had the burden of supporting its argument both below and on appeal with citation to the record, *Foster*, 141 Idaho at 893, 120 P.3d at 281; *Bach v. Miller*, 144 Idaho 142, __, 158 P.3d 305, 308 (2007), we affirm the grant of summary judgment as to these claims on the alternate ground that Commercial failed to provide sufficient facts to survive a motion for summary judgment.

**E. Motion for Leave to Amend Complaint and Attorney Fees Below**

Commercial next argues that the district court erred, as a result of wrongly entering summary judgment, in denying its motion for leave to amend its complaint and in awarding attorney fees and costs below. However, each of these claims is premised on the assumption that summary judgment was improper. We affirm the grant of summary judgment to the Respondents, so there is no basis for reversal of the district court's decision to deny Commercial's motion to amend its complaint or its award of attorney fees and costs.

**F. Attorney Fees on Appeal**

Commercial, Wilde, and the Lea Respondents seek attorney fees on appeal pursuant to Idaho Code § 12-120(3). Idaho Code § 12-120(3) compels an award of attorney fees to the prevailing party in a civil action to recover in any commercial transaction. *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 729, 152 P.3d 594, 600 (2007). Commercial is not the prevailing party and is not entitled to attorney fees on appeal. However, Lynn, Lea Electric and the Trust are prevailing parties here and are entitled to attorney fees on appeal pursuant to I.C. § 12-120(3). Since Wilde did not have a contract with Commercial, he cannot recover attorney fees pursuant to this section.

However, Wilde also requested attorneys fees pursuant to I.C. § 12-121. That section permits the award of attorneys fees to the prevailing party if the court determines the case was

---

for summary judgment on these claims, the burden to prove a genuine issue of material fact shifted to Commercial. *See Foster v. Traul*, 141 Idaho at 893, 120 P.3d at 281.

brought, pursued or defended frivolously, unreasonably or without foundation. *Nation v. State Dept. of Corrects.*, 144 Idaho 177, __, 158 P.3d 953, 970 (2007). We find that Commercial has pursued this appeal frivolously, unreasonably and without foundation. Therefore, because Wilde is a prevailing party, we award him attorneys fees pursuant to I.C. § 12-121.

Finally, Century 21, citing to I.A.R. 35(b)(5) and 41(a), requests attorney fees on appeal "on the grounds that the present appeal has been brought, pursued, and maintained frivolously, unreasonably, and without foundation." However, neither of these rules provide a mechanism by which this Court can award attorney fees. Rule 35(b)(5) merely requires that a party indicate in the "Issues on Appeal" section of its brief that it seeks attorney fees. As we have held numerous times, Rule 41 provides the procedure for requesting attorney fees on appeal, but is not authority alone for awarding fees. *See e.g. Goodman v. Lothrop*, 143 Idaho 622, 628, 151 P.3d 818, 824 (2007). Therefore, we cannot award attorney fees to Century 21.

## IV. CONCLUSION

We affirm the district court's decision as to the motions for summary judgment, motion for reconsideration, motion for leave to amend complaint, and motions for costs and fees. We decline to award Commercial attorney fees. We award attorney fees to Wilde and the Lea Respondents. Costs to Respondents.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**