IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38827

FRANK RONALD MAREK and GAYLE A. )
MAREK, husband and wife, )
                                    )
    Plaintiffs-Appellants, )
                                    )        **Lewiston, May 2012 Term**
v. )
                                      )        **2012 Opinion No. 81**
EARL A. LAWRENCE and SANDRA L. )
LAWRENCE, husband and wife; ROBERT )        **Filed: May 30, 2012**
C. JOHNSON, a married man; SANDI )
WORTHINGTON, a married woman, )        **Stephen W. Kenyon, Clerk**
                                      )
    Defendants-Respondents. )
                                      )
                                      )

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. John Bradbury and Michael J Griffin, District Judges.

District Court judgment boundary line dispute, <u>vacated</u> and <u>remanded.</u>

Clark & Feeney, Lewiston, for appellants. Paul T. Clark argued.

Mark S. Snyder, Kamiah, argued for respondents.

_____

BURDICK, Chief Justice

    This case concerns the appeal of Frank Ronald Marek and Gayle Marek (the Mareks) of the district court's decision and judgment decreeing the locations of two boundary lines in dispute between the Mareks and Earl A. Lawrence and Sandra L. Lawrence (the Lawrences). As the deed at question in this appeal was unambiguous, we find that the district court impermissibly consulted evidence outside of the language of the deed and we remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    On October 2, 2008, the Mareks filed a complaint against the Lawrences seeking declaratory relief as well as claims for trespass, conversion, and attorney fees. The Mareks describe two alleged boundary disputes between the parties, one along the center section line of Section 27, Township 38 North, Range 1 West, Boise Meridian, the other along the eastern

1

boundary of Three Bear Road, near the section line dividing sections 26 and 27. The Mareks are owners of the E1/2 of the SW1/4, the NW1/4 of the SE1/4, and the NE1/4 of the SE1/4 of Section 27 and the SW1/4 of the NW1/4 of Section 26, less rights-of-way and those portions lying north of the county road in Section 26. The Lawrences own the S1/2 of the SE1/4 of Section 27 and the NW1/4 of the SW1/4 of Section 26, less rights-of-way. The Mareks contest the fence line between the parties' properties in Section 27, and allege that a portion of their property in the NE1/4 of the SE1/4 of Section 27 lies to the east of Three Bear Road, but that the Lawrences farm that portion of their property.[1]

The Lawrences answered with a counterclaim for quiet title, averring that the location of the section line boundary has been in dispute or uncertain for several decades; that the Three Bear Road runs parallel to this line; and that they have used the property up to the Three Bear Road for more than twenty years prior to the filing of the action. Upon the Lawrences' motion for summary judgment, the district court found that the Lawrences were not entitled to summary judgment on their adverse possession claim because of inadequate evidence. Following the district court's summary judgment decision, the Mareks filed amended complaints adding a claim for damage to personal property, claiming that they had sustained damages relocating a fence that the Lawrences had re-erected pursuant to a Preliminary Injunction in the wrong location.

Subsequent to a second motion for summary judgment, the district court concluded that the Lawrences were not entitled to a grant of summary judgment because there were still material facts in dispute for either an expressed or implied boundary by agreement. The Lawrences then filed a Motion to Reconsider or Clarify pursuant to I.R.C.P. 11(a)(2)(B).

The district court granted the Lawrences' motion, stating that it had reconsidered its previous decision and that it had made an incorrect conclusion. The district court reaffirmed its finding that there was no boundary by agreement, reasoning that there could not be an uncertainty as to the location prior to a conveyance (Johnson-Adamson Deed) between predecessors of title to the Mareks and Lawrences, because no boundary line existed prior to the

---

[1] The appeal focuses on the Three Bear Road dispute. All references to this property should be the boundary between the NE1/4 SE1/4 of Section 27 and the NW1/4 SW1/4 of Section 26, and the 1/4 corner common to Sections 26 and 27 (i.e., the West 1/4 corner of Section 26 and the East 1/4 corner of Section 27). At times, the district court and the appellant mistakenly refer to the *North* 1/4 corner between Sections 26 and 27, and then to the NW1/4 of Section 26 and the NE1/4 of Section 27.

2

conveyance.[2]  The district court had previously found that a boundary line formed by the Johnson-Adamson Deed "could be construed to place the boundary line according to wherever the section line might one day be surveyed to lay," but now held that this conclusion was incorrect.  The district court reasoned:

> [W]hen Mr. Johnson referenced Section 27 in deeding part of his land to Ms. Adamson, he did not mean to grant away part of his land and end up not knowing for certain where his new boundary lay.  Rather, he meant to create a new boundary for himself in a particular location.  And, of course, Ms. Adamson meant to purchase land with a boundary in a particular location.  Therefore, in referencing Section 27, Mr. Johnson and Ms. Adamson could only have meant to determine their new boundaries according to where . . . they then believed the eastern line of Section 27 to lay, not wherever it might one day be surveyed to lay.

Additionally, the district court found that based on the evidence presented, it was the parties' intention in the Johnson-Adamson Deed to convey "the property up to the section line minus the road right of way."  Also, no evidence was presented that would suggest that either party of the Johnson-Adamson Deed believed the section line ran anywhere other than where the survey at the time had placed it.  Further, an affidavit from the predecessor in title, Johnson, confirms that the farming line went up to the edge of the Three Bear Road at the time of the conveyance.  Finally, as the Mareks purchased the property from Adamson, they could only own land that was conveyed to Adamson by Johnson, which was the land to the west of the road.  Everything to the east of the center line of the road was subsequently sold by Adamson to the Lawrences.  A judgment was then filed decreeing the boundary lines between the parties' properties, setting them as the fence along the center section line in Section 27, and that part of the Three Bear Road parallel with the section line between Sections 26 and 27, extended northerly to the north line of the Lawrences' property.  The Mareks filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This Court reviews a decision of whether to grant or deny a motion for reconsideration made pursuant to Idaho Rule of Civil Procedure 11(a)(2)(B) under an abuse of discretion standard.  *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 560, 212 P.3d 982, 990 (2009); *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 212, 177 P.3d

---

[2] The legal description on the Johnson-Adamson Deed states "Sec 27, 38N, 1W, El/2 NESE, Less S 36', and Less 1.06 AC Road Right of Way in Sec 27 Recorded No 108078."  Prior to the deed, Johnson owned property to the west and to the east of Three Bear Road, the portion deeded to Adamson, and the N1/2 SW1/4, Section 26, Township 38 North, Range 1 West.

955, 959 (2008). The abuse of discretion determination is a three part test which asks whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Commercial Ventures, Inc.*, 145 Idaho at 212, 177 P.3d at 959 (quoting *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004)).

For an appeal reconsidering a summary judgment motion, this Court will review whether the district court acted within the legal standards applicable to summary judgment. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). A summary judgment is appropriate when all of the pleadings, affidavits, discovery documents, and admissions, read most favorably in light of the non-moving party, demonstrate that no material issue of fact exists, and the moving party is entitled to a judgment as a matter of law. *Id.*; I.R.C.P. 56(c). The moving party has the burden of proving the absence of material facts, and the adverse party is unable to rest upon the mere allegations or denials from the pleadings, but must set forth specific facts showing a genuine issue for trial by affidavits or as otherwise provided in rule I.R.C.P. Rule 56(e). *Baxter*, 135 Idaho at 170, 16 P.3d at 267. "In other words, the moving party is entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Id.*

## III. ANALYSIS

### A. The district court erred by considering the parties' intent regarding the Johnson-Adamson Deed.

The Mareks argue that after the district court determined the Johnson-Adamson Deed to be unambiguous, it impermissibly considered extrinsic evidence instead of determining the parties' intent from the language of the Deed. The Lawrences respond that although Johnson and Adamson may have been mistaken as to the true location of the section line dividing their properties, they agreed on the location of their boundary. We agree with the Mareks that the district court impermissibly considered the intent of the parties at the time of the conveyance by referring to the Johnson Affidavit.

> In interpreting and construing deeds of conveyance, the primary goal is to seek and give effect to the real intention of the parties. When an instrument conveying land is unambiguous, the intention of the parties can be settled as a matter of law using the plain language of the document. However, if the language

of the deed is ambiguous, ascertaining the parties' intent is a question of fact and may therefore only be settled by a trier of fact. Ambiguity may be found where the language of the deed is subject to conflicting interpretations. The trier of fact must then determine the intent of the parties according to the language of the conveyance and the circumstances surrounding the transaction.

Conflicting interpretations may arise when no potential boundary line unambiguously fits the language contained in the deed. In *Read* [*v. Harvey*, 141 Idaho 497, 499-500, 112 P.3d 785, 787-88 (2005)], the language of the deed stating 'centerline of the creek,' 'centerline of the main tributary of the creek,' and 'centerline of the main tributary to Gold Creek' may have referred to one of two drainage ditches or a comparatively dry historical natural creek channel. Neither of the drainage ditches, nor the creek channel, unambiguously fit the language contained in the deeds, making the intentions of the drafters unclear. [Where the intention of the drafters is unclear, the determination is a question] of fact with reference to the surrounding facts and circumstances.

[C]onflicting interpretations may arise when a phrase lends itself, without contortion, to a number of inconsistent meanings. . . . [Also,] inconsistencies in a deed may throw such a shadow of ambiguity over [an] instrument as to warrant the introduction of parol evidence as an aid to discovering the intention of the parties.

*Porter v. Bassett*, 146 Idaho 399, 404-05, 195 P.3d 1212, 1217-18 (2008) (internal citations and quotations omitted).

In its May 27, 2009 Memorandum Decision and Order, the district court denied the Lawrences' motion for summary judgment on a theory of adverse possession, finding that the Lawrences had not "offered sufficient proof that their possession was open, notorious, and hostile to the interests of the Mareks and their predecessors." In its discussion of the matter, the district court found that the "Lawrences and their predecessors in interest cultivated the disputed area between the section line and Three Bear Road, the Mareks and their predecessors paid the taxes." Upon a second motion for summary judgment filed by the Lawrences, this time on a theory of boundary by agreement, the district court again denied the motion. The disputed boundary in the motion, the area between the section line and Three Bear Road, was claimed by the Lawrences as an express boundary by agreement as agreed in the Johnson-Adamson Deed to be what would now be the Mareks' eastern boundary as the section line envisioned to run within the right-of-way deed. The Mareks claimed that the language of the Johnson-Adamson Deed simply notified the purchaser that the conveyance did not include any interest in the right-of-way over a 1.06 acre portion of the property. The district court found the following undisputed facts concerning the Three Bear Road boundary dispute:

5

The adjoining property owners own lands generally falling on the western and eastern sides, and within the northern corners, of Clearwater County sections 26 and 27; the Mareks owning the property on the western side of the line, in the northwest corner of section 27, and the Lawrences owning the property on the eastern side of the line, in the northeast corner of section 26.[3] The disputed portion of the property lies to the east of the section line according to the most recent survey (the Cuddy survey), and to the west of the portion of Three Bear Road that curves away from that surveyed section line slightly toward the west.

The prior owner of the disputed land, and the adjacent parcels to the east and west of the disputed land, was R.C. Johnson. However, prior to Mr. Johnson's outright ownership, his father, Wayne Johnson, retained a life estate in the property. During the time that the senior Johnson still retained a life estate, specifically, December 9, 1974, he executed a right of way deed to Clearwater County to allow the county to move Three Bear Road slightly eastward.[4] Additionally, if the right of way boundary description measurements, all stated as a certain distance from the section line of sections 26 and 27, are plotted on an aerial photo of the disputed and surrounding lands (as performed by R.C. Johnson in "Exhibit 'D'" of his affidavit) using the alleged location of an old concrete survey marker as the section line, then the right of way land very closely matches the actual location of Three Bear Road.

On August 8, 1985, R.C. Johnson conveyed property described as follows to the Marek's predecessor, Laura Adamson: "Sec 27, 38N, 1W El/2 NESE, LESS S 36′, AND LESS 1.06 AC ROAD RIGHT OF WAY IN SEC 27 RECORDED No 108078."

The Mareks also currently own a parcel of land directly to the north of the Lawrences' property. A road accessing this northern parcel crosses the disputed property, coming off of Three Bear Road, heading slightly east, and then turning north, almost paralleling Three Bear Road. The property between Three Bear Road and the access road is not currently cultivated, though all of the disputed land to the east of the access road is currently farmed by the Lawrences.

On the theory of an express boundary by agreement, the district court found that a reasonable person could draw conflicting inferences as to the interpretation of the Johnson-Adamson Deed. One of the inferences was that the section line was previously believed by the predecessor in title, and the county when it relocated a portion of the road, to be west of where the most recent survey actually located the line. Further, the reference to the right-of-way deed in the Johnson-Adamson Deed could have been intended to incorporate the then-contemplated location of the section line as the boundary line of the property conveyed. The district court next found that the opposite inference was also reasonable—that the deed could be read to mean that the right-of-way was merely being excluded from within the description of the property, not as a

---

[3] *See supra* note 1.
[4] The validity of this conveyance by Wayne Johnson was not an issue raised on appeal.

line intended to be the boundary. As to the theory of an implied boundary by agreement, the district court found that the use of the land to the east of Three Bear Road was still a genuine issue of fact left to be resolved.

Upon a motion to reconsider or clarify pursuant to I.R.C.P. 11(a)(2)(B), the district court stated that "[i]n my decision on the Lawrences' second Motion for Summary Judgment I concluded that one possible interpretation of the alleged agreement (the Johnson-Adamson deed) is that the boundary was agreed to be wherever the section 26-27 section line might one day be surveyed to be. Under such an interpretation of the alleged agreement the Mareks would prevail, and thus, I denied summary judgment." After describing how a boundary by agreement theory was inapplicable in this case, the district court stated that on reconsideration of the interpretations of the deed, it had found that based on the language alone, the boundary asserted by the Lawrences was correct.[5]

> When a landowner sells off a portion of his land, he certainly has in mind an on-the-ground location where his property will thereafter end and the purchaser's property will begin. Additionally, the purchaser certainly has an on-the-ground location in mind as to where her property line is located. Therefore, when Mr. Johnson referenced Section 27 in deeding part of his land to Ms. Adamson, he did not mean to grant away part of his land and end up not knowing for certain where his new boundary lay. Rather, he meant to create a new boundary for himself in a particular location. And, of course, Ms. Adamson meant to purchase land with a boundary in a particular location. Therefore, in referencing Section 27, Mr. Johnson and Ms. Adamson could only have meant to determine their new boundaries according to where . . . they then believed the eastern line of Section 27 to lay, not wherever it might one day be surveyed to lay.
>
> The Mareks presented no evidence on where Mr. Johnson or Ms. Adamson believed that the Section 26-27 line ran. The Lawrences, however, presented evidence showing where Mr. Johnson and Ms. Adamson believed the section line to lay. Mr. Johnson stated in his affidavit that he knew of a certain monument. That the monument was in existence east of Three Bear Road where it intersected the east-west centerline of sections 26 and 27 at the time the Three Bear Road was modified. That a survey was made prior to the modification of Three Bear Road. That, if one uses the description of the road right of way in the right of way deed and measures back from the centerline of the road, one finds a section line at the location of the old monument. That it was his and Ms. Adamson's intention to convey to her the property up to the section line minus the road right of way.

---

[5] The boundary by agreement theory was found to be inapplicable because an uncertainty or disagreement as to the location of the boundary line would be impossible prior to the Johnson-Adamson Deed as Johnson owned all of the property prior to the conveyance.

By measuring back from the center of the road at the northern boundary of the southeast quarter of section 27 and the southwest quarter of section 26, it is clear that Wayne Johnson and the County considered the section 26-27 boundary to lay in line with the center of the road where it now runs north to south, and continuing on the same line proceeding north when the road curves to the west. There is no suggestion that eleven years later R.C. Johnson, or anybody else, believed the section line to run anywhere else then where the last survey, the county survey, had suggested the line lay. This, along with R.C. Johnson's knowledge of the location of the monument, establishes that he believed the section line to run down the center of Three Bear Road where it runs north to south, continuing north where the road curves to the west. There has been no evidence presented that Ms. Adamson believed that the section line ran anywhere other than where the last survey placed it, or anywhere other than where her seller believed it to run. Therefore, the uncontroverted evidence indicates that Mr. Johnson and Ms. Adamson, when referencing Section 27 in the Johnson-Adamson deed, intended that her boundary be determined in reference to a line running down the center of Three Bear Road where it runs north to south, such line continuing north where the road curves to the west. Furthermore, the affidavit of R.C. Johnson confirms such beliefs. His affidavit states that the farming line went up the edge of the Three Bear Road at the time he conveyed the land to the west of the road to Ms. Adamson, and where the road curves to the west, the farming line continued in line with the old monument, which is also in line with the center line of Three Bear Road.

The Mareks, as Ms. Adamson's successors in interest, can only own what R.C. Johnson conveyed to Ms. Adamson. Therefore, according to the language in the Johnson-Adamson deed and my conclusions above, the Mareks only own property west of Three Bear Road where it runs north to south, and own only that property east of Three Bear Road between the road and the centerline of the road as it continues north beyond where the road curves to the west. R.C. Johnson kept for himself everything east of the centerline of Three Bear Road until he conveyed it to the Lawrences['] predecessors. Therefore, the Lawrences own everything to the east of the centerline of Three Bear Road, excluding of course the road bed itself, as Mr. Johnson reserved the road right of way out of their deed also.

Accordingly, the district court granted the motion for reconsideration because the "uncontroverted evidence presented by the Lawrences shows that Mr. Johnson and Ms. Adamson believed the section 26-27 boundary line to run up the middle of Three Bear Road, continuing north where the road veers to the west." The district court concluded that this line, minus the road, was the boundary set by the predecessors in title.

The district court's interpretation of the Johnson-Adamson Deed relied on the legal description of the deed itself (E1/2 NESE Sec 27) and the legal description from the instrument describing the "Less 1.06 Ac Road Right of Way in Sec 27 Recorded No 108078." A deed's

8

description is "sufficient so long as quantity, identity or boundaries of property can be determined" from its face, or by the reference to an external record to which the deed refers. *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009).

The Right of Way Deed recorded at reception number 108078 contains the following legal description:

> A part of the NWSW 1/4 of Section 26 T38N R1W and part of the NESE 1/4 of Section 27 T38N R1W Clearwater County State of Idaho, and [illegible] described as follows:
> Commencing at the 1/4 corner common to sections 26 and 27, thence, West 20 feet to the TRUE POINT OF BEGINNING, thence;
> West, 60 feet;
> South 9° 30' East, 300 feet;
> East, 60 feet;
> North 9° 30' West, 300 feet to the TRUE POINT OF BEGINNING and being an area of 0.40 acres, more or less.
>
> Also a tract of land comprising the existing County road right of way and described as follows:
> Commencing at the 1/4 corner common to Sections 26 and 27, thence South 299 feet to the TRUE POINT OF BEGINNING, thence;
> West, 30 feet;
> South, 1021 feet, more or less, to the South 1/16 line of NESE 1/4;
> East, 60 feet;
> North, 1021 feet;
> West, 30 feet to the TRUE POINT OF BEGINNING and comprising an area of 1.40 acres, more or less.

With these legal descriptions, the district court ascertained that the intent of the parties was that the boundary line between Section 26 and 27 was the centerline of Three Bear Road for the south 1021 feet, and a line continuing north to the point described as the "1/4 corner common to sections 26 and 27" as described in the Right of Way Deed.

Although the district court claimed the deed was unambiguous, it nevertheless took into consideration Johnson's affidavit and evidence of where Johnson believed the boundary line to be located. This was error. If the deed was unambiguous, it would have been unnecessary to consider the parties' intent outside the language of the deed. But if the parties' intent was an important part of the district court's conclusion, then the deed was ambiguous and the parties' intent is a question of fact for the trier of fact. *Read v. Harvey*, 141 Idaho 497, 500, 112 P.3d 785, 788 (2005) ("The intentions of the parties . . . must be determined as questions of fact with reference to the surrounding facts and circumstances."). If the intention of the parties' was an

9

unnecessary piece of the district court's ultimate conclusion, the district court's decision and the record itself does not make it abundantly clear. Although the deeds are included in the record, none of the supposed surveys in question are included, or at least in a way that is apparent to this Court. Additionally, many of the references to a survey or drawing in the record were very unclear.[6] Further, the judgment in this case fails to give either party significant guidance. Accordingly, we hold that the district court's consideration of evidence outside the language of the deed was in error and the subsequent judgment in this case is deficient.

## B. The Lawrences are not entitled to attorney fees on appeal.

The Lawrences argue that that they should be awarded attorney fees pursuant to I.C. § 12-121 for the expenses they have incurred in response to this frivolous appeal.

An award of attorney fees pursuant to Idaho Code section 12-121 is inappropriate where a party merely cites to the code section and fails to provide any argument as to why the party is entitled to the award pursuant to the code section. *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010). Under the Idaho Appellate Rules, a party is required to include in its opening brief "the contentions of the [party] with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6) (requirements for appellant); 35(b)(6) (requirements for respondent).

In the "Issue on Appeal" section of the Respondent's Brief, the Lawrences state:

> Also at issue is whether this appeal was frivolous and lacked merit sufficient to allow an award of attorney fees and costs on appeal as stated in [I.C.] § 12-121.

In the section entitled "Conclusion," the Lawrences also include the following sentence:

> The Lawrences further claim the additional attorney fees they have incurred to protect their property lines in this matter resulted from a frivolous appeal and they should therefore be awarded judgment for such expense pursuant to [I.C.] § 12-121.

---

[6] A good illustration of this point is from one of many interactions before the court in the transcript that make references to locations on an exhibit without describing where the parties are pointing to on the exhibit. In many of these instances, the record is unclear as to which exhibit the parties are referencing.

> If you accept this surveyor's identification of the location of *this* corner, which by the way is a big if, it puts *this* boundary line down like *this* to where it eventually hits the road at *this* kind of an angle. They thought . . . way back when they thought they were building *this* road right on the section line.

10

The Lawrences have failed to explain how they are entitled to attorney fees pursuant to I.C. § 12-121, and have failed to explain the Court's standard under I.C. § 12-121 or how this appeal meets that standard. *See Bagley*, 149 Idaho at 805, 241 P.3d at 978. Further, the Lawrences are not the prevailing party on appeal. *Aguilar v. Coonrod*, 151 Idaho 642, 650, 262 P.3d 671, 679 (2011). Thus, the Lawrences are not entitled to attorney fees on appeal.

## IV. CONCLUSION

As the district court impermissibly considered evidence outside the language of the deed on reconsideration of summary judgment, we vacate the judgment and remand for further proceedings. Also, we find that the Lawrences are not entitled to attorney fees on appeal. Costs to the Mareks.

Justices EISMANN and W. JONES, **CONCUR.**

J. JONES, Justice, specially concurring.

I concur in the Court's opinion. Judge Bradbury clearly erred in concluding in his written decision on reconsideration that a section line can be located where parties think it should be, rather than where a survey would show it to be. Section lines do not move. They are located where a valid survey establishes them to be. When a legal description in a deed utilizes section lines, half-section lines, or quarter-section lines, those lines are established by survey and do not move depending on what parties to the deed may think more appropriate. There can be differences between surveys but those are to be adjudicated based on presentation and consideration of competent expert evidence.

The Johnson-Adamson Deed is clearly unambiguous. Johnson conveyed to Adamson the E½ of the NE¼SE¼ of Section 27, less the south 36 feet of that surveyed parcel and less the parcel described in the Right of Way Deed recorded as Instrument No. 108078, Clearwater County records. It may be odd that the Johnson-Adamson Deed specifically exempted the right of way deeded to Clearwater County in Instrument No. 108078 (apparently leaving Johnson as the owner of the land underlying the County's road right of way), but that is the effect of the deed and no amount of parol evidence can change it. Where the language of a deed is unambiguous, a court may not rewrite it.

REINHARDT, J., Pro Tem, concurs.

11