# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43376

| | |
|---|---|
| DAVID & KRISTINA PARKS, | ) |
| | ) Pocatello, May 2016 Term |
| Plaintiffs-Appellants, | ) |
| | ) 2016 Opinion No. 84 |
| v. | ) |
| | ) Filed: July 27, 2016 |
| SAFECO INSURANCE COMPANY OF ILLINOIS, | ) |
| | ) Stephen W. Kenyon, Clerk |
| | ) |
| Defendants-Respondents. | ) |
| _____ | ) |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

The judgment of the district court is <u>affirmed</u>. Attorney fees and costs on appeal are <u>awarded</u> to respondent.

Lowell N. Hawkes, Chartered, Pocatello, attorneys for appellants. Lowell N. Hawkes argued.

Anderson, Julian & Hull, LLP, Boise, attorneys for respondent. Mark D. Sebastian argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

David and Kristina Parks (collectively the "Parks") appeal from a district court dismissal on summary judgment. A wildfire destroyed the Parks' house, which was insured by Safeco Insurance Company ("Safeco"). The Parks purchased an existing house, and Safeco paid the Parks a total of $255,000, the cost of the replacement house less the value of the land. The Parks filed a complaint against Safeco alleging: (1) they are entitled to $440,195.55 under the policy and (2) Safeco committed bad faith in handling the claim. Safeco filed a Motion for Summary Judgment asserting that the policy was not breached and its conduct did not constitute bad faith. The Parks filed a Cross-Motion for Summary Judgment asserting that Safeco misrepresented the policy. Additionally, the Parks moved to amend their complaint to include a claim for punitive damages. The district court held that: (1) there was no breach of contract because the policy was unambiguous and the Parks received the amount due under the clear language of the policy; (2)

1

Safeco did not commit bad faith in handling the claim because it complied with the terms of the policy and paid the Parks the amount owed; and (3) the Parks had not established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 28, 2012, a fire in Pocatello, Idaho destroyed the Parks' house. The Parks' house was insured through a homeowners policy ("Policy") issued by Safeco, which provided a total home coverage of $464,875. Following the fire, Safeco hired an appraiser to determine the actual cash value ("ACV") of the Parks' destroyed house. The Policy defined ACV as "the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market." Mrs. Parks understood that, pursuant to the Policy, Safeco would pay the ACV as soon as the appraisal was completed, but the replacement cost payment would be handled once a replacement was made.

The appraisal was completed on July 21, 2012, and stated that the ACV of the Parks' destroyed house was $169,000. Accordingly, on July 26, 2012, Safeco mailed a check for $169,000 to the Parks. Although the Parks believed the ACV of their house was higher than the appraisal, Mr. Parks acknowledged that he had no grounds upon which to argue. Safeco clarified to Mr. Parks that the ACV was not the complete payment; it was "just the beginning."

In a letter sent with the ACV payment, Safeco informed the Parks that the limit of their coverage was $464,875. The letter stated, "[i]n order to claim the full replacement cost, you must replace the dwelling." The letter included the relevant portions of the Policy and informed the Parks that Safeco was "in the process of obtaining a replacement cost bid for equivalent construction of your home. . . . You may replace your dwelling on the existing location; build on a new location or purchase an existing home."

On September 20, 2012, Belfor Construction ("Belfor"), which was hired by Safeco, estimated that it would cost $440,195.55 to replace the Parks' house, using equivalent construction. On October 17, 2012, the Parks' stated they could not agree that $169,000 was the ACV of their house. Additionally, the Parks' asked whether Safeco was willing to be bound by the Belfor estimate. Safeco confirmed that it approved the Belfor estimate and clarified that it would "pay the replacement cost of the dwelling up [to] $440,195.55 or the amount actually incurred, whichever is less."

2

On December 6, 2012, the Parks purchased a home in the Idaho Falls area for $300,000 (the house was valued at $255,000 and the land was valued at $45,000).[1] Mr. Parks acknowledged that the amount actually incurred as a result of the fire, in terms of replacing the existing structure, was $300,000, less the value of the land.

On December 26, 2012, the Parks sent a demand letter to Safeco requesting payment of $440,195.55, less the credit of the ACV check, for a net payment of $271,195.55 as their "direct financial loss." Additionally, the Parks explained that they purchased an existing house in the Idaho Falls area instead of rebuilding on the lot of their destroyed house. Safeco responded to clarify that it agreed to pay up to $440,195.55 for the cost of replacement or the amount actually incurred, whichever was less. Safeco also requested documentation to confirm the replacement had been made and the amount actually spent. After receiving no response, Safeco sent another letter, on January 22, 2013, again requesting documents to confirm the purchase of a new house. The following day, the Parks reiterated that their actual loss was $440,195.55. Again, Safeco requested the documents necessary to determine the replacement cost. Safeco also stated: "We agree the replacement cost of the damaged structure will be provided up to the amount of $440,195.55. Upon receipt of the documentation to confirm replacement and the amount actually spent, we will promptly review for replacement cost payment per the Loss Settlement provision of our policy." Safeco continued to request the documents necessary to determine the amount due for the replacement. On May 31, 2013, the Parks provided documentation of the Idaho Falls house purchase, but disputed Safeco's claim that the replacement cost was limited to the amount actually spent.

On June 8, 2013, Safeco agreed "to pay the additional undisputed amount for the difference between the market value and replacement cost of the dwelling which has been incurred by Mr. And Mrs. Parks at this time." In response, the Parks notified Safeco they would be "filing suit against Safeco on the house loss given Safeco's rejection of the Parks' right to recover their *actual* insured loss – their 'Direct Financial Loss' – acknowledged by Safeco and as determined by its own selected evaluator." On June 14, 2013, Safeco paid the Parks $86,000 for

---

[1] The Parks do not dispute that the land is not included in replacement cost, nor are they disputing the valuation of the land.

the undisputed dwelling replacement cost ($300,000 for the cost of the Idaho Falls home, less $45,000 for the land, less the $169,000 previously paid).[2]

On June 13, 2013, the Parks filed a complaint against Safeco, alleging that they were entitled to $440,195.55 under the Policy and that Safeco acted in bad faith in the handling of the matter. Safeco filed a Motion for Summary Judgment asserting that it did not breach the Policy and it did not act in bad faith. The Parks filed their own Motion for Summary Judgment, arguing there was no genuine issue of fact as to their entitlement to the full amount of the replacement cost for the loss of their house. The Parks' motion also requested an order allowing them to amend their complaint to add a claim for punitive damages. The Parks included a declaration from an insurance industry expert that the word "incurred" as used in the Policy must mean the amount estimated to repair or replace the loss. Safeco moved, *inter alia*, to strike the expert's declaration because it was: (1) untimely and (2) irrelevant and infringed on the court's determination of questions of law.[3] Ultimately, the district court granted Safeco's motion for summary judgment, denied the Parks' motion for summary judgment, and denied the Parks' motion to amend their complaint.

First, the district court held that the Replacement Cost provision of the Policy was unambiguous. Specifically the district court held that the word "replace" was unambiguous. The district court noted that the Parks had three options to replace their destroyed home: (1) rebuild their house in the same location; (2) build a house in a new location; or (3) purchase an existing home. Despite the fact that the definition of "replace" varied depending on the context, the district court held that it was not reasonably subject to conflicting interpretations. Thus, "[w]ithin the context of the Replacement Cost provision, all interpretations of 'replace' as used in the Policy plainly provide that [Safeco had] three options to 'supply or substitute an equivalent for' the [Parks'] destroyed home." Additionally, the district court held that the term "incur" in the Replacement Cost provision was unambiguous. The district court held that the term could not reasonably be interpreted to include the Belfor estimate; rather, the Parks "incurred or brought on themselves an expense to replace their destroyed home by buying a replacement home in Idaho Falls."

---

[2] The Parks received an additional amount in this payment for their personal property losses. They have received the full limit for their personal property losses. Accordingly, no part of their claim against Safeco involves personal property.

[3] The district court did not rule on Safeco's motion to strike.

Second, the district court held there were no genuine issues of fact regarding Safeco's compliance with the obligations under the Policy. The district court noted: "[t]here is nothing in the Policy that allows Plaintiffs to purchase a less expensive house and then claim the difference between the less expensive house and the cost to rebuild." Therefore, the district court held that the Policy was unambiguous, the Parks were bound by its plain terms, and the Parks received the amount due under the clear language of the Policy.

Third, the district court noted that to recover under a claim of bad faith, there must also have been a duty under the Policy that was breached. The district court found there was no breach of contract, and, therefore, Safeco could not have committed bad faith in handling the Parks' Policy.

Fourth, the district court denied the Parks' motion to amend the complaint to add a claim for punitive damages because the Parks had "not established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."

The Parks appealed.

### III. ISSUES ON APPEAL

1. Whether the district court erred in granting summary judgment against the Parks regarding their breach of contract claim.

2. Whether the district court erred in granting summary judgment against the Parks regarding their claim that Safeco's conduct constituted bad faith.

3. Whether the district court erred in holding that the Parks were not entitled to amend their Complaint to assert a claim for punitive damages.

4. Whether either party is entitled to attorney fees on appeal pursuant to Idaho Code section 41-1839.

### IV. STANDARD OF REVIEW

**A.      Summary Judgment**

> On appeal from the grant of a motion for summary judgment, we review that decision de novo but apply the same standard used by the district court in ruling on the motion. *McColm–Traska v. Valley View Inc.*, 138 Idaho 497, 65 P.3d 519 (2003); *Carnell v. Barker Management, Inc.*, 137 Idaho 322, 48 P.3d 651 (2002). As a general rule, this Court will affirm the judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Carnell*, 137 Idaho at 327, 48 P.3d at 656. When making its determination, the Court construes all facts in the light most favorable to the nonmoving party. *Id.*

5

*Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 662, 115 P.3d 751, 753 (2005).

## B.     Motion to Amend Complaint

"A trial court's ruling on a motion to amend a complaint to add a claim for punitive damages is reviewed for an abuse of discretion." *Weinstein v. Prudential Property and Cas. Ins. Co.*, 149 Idaho 299, 311, 233 P.3d 1221, 1233 (2010) (citing *Todd v. Sullivan Constr. LLC*, 146 Idaho 118, 121, 191 P.3d 196, 199 (2008)). To determine whether a district court abused its discretion, this Court applies a three part test asking whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Marek v. Lawrence*, 153 Idaho 50, 53, 278 P.3d 920, 923 (2012) (quoting *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 212, 177 P.3d 955, 959 (2008)).

## V. ANALYSIS

### A.     The district court did not err in granting summary judgment in favor of Safeco regarding the Parks' breach of contract claim.

We affirm the district court's grant of summary judgment for Safeco. "In interpreting an insurance policy, 'where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used.'" *Cascade Auto Glass*, 141 Idaho at 662–63, 115 P.3d at 753–54 (quoting *Clark v. Prudential Property and Cas. Ins. Co.*, 138 Idaho 538, 541, 66 P.3d 242, 245 (2003)). Here, Safeco satisfied its obligations under the plain language of the Policy by complying with subsection (1), the relevant portion of the Loss Settlement provision.

Subsection (1) of the Loss Settlement provision states that Safeco would pay the full cost of replacement, but not exceeding the smallest of the following: (a) the limit of liability under the policy ($464,875); (b) the replacement cost on the same premises ($440,195.55); (c) the amount actually and necessarily incurred to replace the building ($255,000); or (d) the direct financial loss incurred (the Parks claim this is the Belfor estimate of $440,195.55). Safeco had already paid the Parks $169,000, the ACV of their house, pursuant to subsection (3) of the Loss Settlement provision. The Parks then decided to purchase the Idaho Falls house, which cost $255,000 ($300,000 purchase price less $45,000 for the land). Safeco paid the Parks $86,000 two weeks after receiving documentation of the Parks' purchase of the Idaho Falls house, and well

6

within the thirty day payment window set out in the Policy. All told, Safeco complied with the plain language of the Policy by paying the Parks $255,000 for the replacement cost ($169,000 previously paid as the ACV plus $86,000). Mrs. Parks conceded that Safeco paid for "the totality of the replacement home."

**B.      The district court did not err in granting summary judgment against the Parks regarding their claim that Safeco committed bad faith in handling the claim.**

The Parks argue that Safeco acted in bad faith by paying the ACV and withholding further payment until the Parks had incurred an expense to replace their house. Safeco contends that it complied with Idaho case law by making payments to the Parks as it was able to determine the Parks' damages – first, advancing the payment of $169,000 as the ACV, and second, waiting to pay the Parks the remainder due under the Policy until the Parks had replaced their house and provided the appropriate documentation.

> In order for a first-party insured to recover on a bad faith claim, the insured must show: "1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages." *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 176, 45 P.3d 829, 832 (2002). Although the tort of bad faith is not a breach of contract claim, to find that the insurer committed bad faith there must also have been a duty under the contract that was breached. *Id.* at 179, 45 P.3d at 835.

*Dave's Inc. v. Linford*, 153 Idaho 744, 753, 291 P.3d 427, 436 (2012).

This Court has held that a duty under a contract must be breached in order to find bad faith. *Id.* Here, Safeco did not breach the Policy; therefore, Safeco did not commit bad faith.

**C.      The district court did not err in holding that the Parks were not entitled to amend their Complaint to assert a claim for punitive damages.**

The Parks contend that their insurance expert concluded that Safeco's conduct was outrageous. Based solely on the declaration of their expert, the Parks contend that they are entitled to present the issue to a jury.

Idaho Code section 6-1604 provides that a plaintiff seeking to recover punitive damages "must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1). Idaho Code section 6-1604(2) provides that a court must allow a motion to amend pleadings to include punitive damages if, "after weighing the evidence presented, the court concludes that, the

7

moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C. § 6-1604(2).

The test to determine whether a trial court has abused its discretion in ruling on a motion to amend a complaint to add a claim for punitive damages consists of three parts asking whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Marek*, 153 Idaho at 53, 278 P.3d at 923 (quoting *Commercial Ventures, Inc.*, 145 Idaho at 212, 177 P.2d at 959 ).

The Parks have failed to demonstrate that an abuse of discretion occurred under any part of the test applied by this Court.

Regarding the first part of the test, the Parks do not argue that the district court perceived the issue as anything other than an exercise of discretion. Because it is the Parks' burden to demonstrate, which they do not attempt to do, this Court cannot hold that the district court abused its discretion under the first part of the test.

Regarding the second part of the test, the Parks failed to demonstrate that the district court violated any legal standard or law in deciding not to allow the complaint to be amended to add a claim for punitive damages. The Parks' briefs are devoid of any legal argument regarding the district court's abuse of discretion. The Parks merely state that the "bottom line is that a seasoned, respected, insurance professional has carefully reviewed the conduct of Safeco and provided a . . . detailed *factual* basis for why Safeco's conduct was outrageous. . . . The Parks are entitled to present that evidence to a jury." There is no evidence to find an abuse of discretion under the second part of the test, which requires that a violation of a law or legal standard be identified.

Regarding the third part of the test, the Parks have failed to demonstrate that the district court's action was outside the bounds of reason. In the briefs, the Parks argue that they are entitled to present their expert's declaration to a jury, but provide no explanation regarding why the district court's denial as to their motion to amend the complaint was outside the bounds of reason. The district court held that Safeco fulfilled the unambiguous terms of the Policy and the Parks could not demonstrate a reasonable likelihood that Safeco committed a bad act with a bad state of mind. Further, the district court concluded that the Parks had not established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

8

In sum, because the Parks have not satisfied the three part abuse of discretion test the district court's denial of the Parks' motion to amend their complaint was not an abuse of discretion.

**D.      Safeco is entitled to attorney's fees on appeal.**

The Parks argue that according to Idaho Code section 41-1839(1) they are entitled to attorney's fees on appeal because Safeco has not paid the amount justly due within thirty days after the proof of loss was furnished. In response, Safeco argues that the ACV was paid within thirty days of receiving the ACV appraisal, and the remainder of the amount justly due was paid within thirty days of receiving documentation of the purchase price of the Idaho Falls house. Accordingly, Safeco argues that the Parks are not entitled to attorney's fees on appeal.

Separately, Safeco argues that according to Idaho Code section 41-1839(4) it is entitled to attorney's fees on appeal. Further, Safeco argues that it is entitled to costs of appeal as a matter of right, should it be found to be the prevailing party pursuant to Idaho Appellate Rule 40.

This Court has analyzed Idaho Code section 41-1839(1) as follows:

> The statute "contains two requirements for an insured to be entitled to an award of attorney fees: (1) the insured must provide a proof of loss as required by the insurance policy; and (2) the insurer must fail to pay the amount justly due within thirty days after receipt of the proof of loss." *Parsons v. Mutual of Enumclaw Ins. Co.*, 143 Idaho 743, 746–47, 152 P.3d 614, 617–18 (2007).
>
> "As defined by this Court, a submitted proof of loss is sufficient when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability." *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 593, 130 P.3d 1127, 1131 (2006). It must also mention a specific sum so that a tender can be made, *Associates Discount Corp. of Idaho v. Yosemite Ins. Co.*, 96 Idaho 249, 257, 526 P.2d 854, 862 (1973), or provide the basis for calculating the amount of the claimed loss, *Boel v. Stewart Title Guar. Co.*, 137 Idaho 9, 14, 43 P.3d 768, 773 (2002) (demand for payment of existing mortgage sufficient even though amount owing on the mortgage was not mentioned).

*Weinstein*, 149 Idaho at 327–28, 233 P.3d at 1249–50. Here, the Parks have failed to demonstrate that Safeco did not pay the amount justly due within thirty days after receipt of the proof of loss. First, Safeco paid the Parks five days after the appraiser determined the ACV of the Parks destroyed home. Then, Safeco paid the remaining amount due two weeks after receiving the closing documents of the purchase of the Idaho Falls home. Thus, Safeco paid the amount justly due within thirty days after receipt of each proof of loss; therefore, the Parks are not entitled to attorney fees on appeal.

Idaho Code section 41-1839(4) provides in pertinent part: "attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 41-1839(4). Here, the Parks' arguments were unreasonable and lacked foundation. The language in the Policy was unambiguous. Moreover, Safeco, on numerous occasions, informed the Parks' of their options. Therefore, we award Safeco attorney fees according to Idaho Code section 41-1839(4). Additionally, Safeco, as the prevailing party, is entitled to costs pursuant to Idaho Appellate Rule 40.

## VI. CONCLUSION

We affirm the district court's April 23, 2015 judgment. Attorney fees and costs to Safeco.

Justices EISMANN, BURDICK and HORTON, CONCUR.

Chief Justice JIM JONES concurring in part and dissenting in part.

I concur in the Court's opinion, with the exception of the award of attorney fees to Safeco. While the Parks' claims are not articulated particularly well, it appears to me that they were asking for an extension of existing law and I would therefore not characterize the case as having been pursued frivolously within the meaning of Idaho Code section 49-1839(4).

This case presents some equities in favor of the Parks but those equities are outweighed by the specific language written by Safeco into its insurance policy. It is fairly obvious that the Parks' attorney allowed his concept of "replacement" to outweigh the limiting language employed in the policy's replacement cost option. As defined in the policy, "replace" does not necessarily have the meaning that comes to mind in everyday life. Webster's New World Dictionary defines replace in this context as "to provide a substitute or equivalent for." However, the policy defines the full cost of replacement as "the full amount actually and necessarily incurred to . . . replace the damaged building." So, the policy only provides for payment of the cost incurred by the insured to replace the building. The Parks argue that the replacement building should be equivalent in size and quality to the building that was destroyed. That is not an unreasonable argument but it conflicts with the policy language. In addition to the not unreasonable assumption of equivalency of the replacement, counsel for the Parks appeared to have been thrown off by the determination made by Belfor Construction on behalf of Safeco that the cost to replace the Parks' house with equivalent construction was $440,195.55. At oral argument of this case, Safeco's counsel conceded that had the Parks chosen to have the house

10

rebuilt on the same lot where it had stood when the fire occurred or had the Parks purchased a house valued in excess of the Belfor estimate, the Parks would have received the full $440,195.55. It is not entirely clear that Safeco would have agreed because, as an alternate to the replacement provision, the policy provides for payment of the "direct financial loss you incur," and provides that the lesser of the two amounts will be paid. Arguably, the direct financial loss incurred by the Parks would have been closer to the $169,000 paid to the Parks as the "actual cash value" of the destroyed home under other provisions of the policy.

The Parks could have challenged the actual cash value determined by Safeco, but they did not. Their counsel invoked the replacement cost option 181 days after the date of loss. Safeco overlooked the 180-day deadline for making claim based on the replacement cost option, which resulted in an additional $86,000 being paid to the Parks for the purchase of the Idaho Falls home.

In the correspondence that led up to the Parks' invocation of the replacement cost option, it is fairly clear that there was a misunderstanding between Safeco and the Parks' counsel regarding what would be paid. In a letter to the Parks' counsel, dated September 20, 2012, Safeco provided a copy of the Belfor estimate, stating that it was "a bid for the replacement of the Parks' home, using equivalent construction." By letter dated November 24, 2012, Safeco said that it would "pay the replacement cost of the dwelling up to $440,195.55 or the amount actually incurred, whichever is less." In a letter to Safeco, dated December 26, 2012, the Parks' counsel invoked the replacement cost option, indicating that the Parks had decided to purchase an existing home and stating an expectation that the Parks would receive an additional $271,195.55 over and above the $169,000 they had already received. Safeco responded on December 27, indicating that it would pay "the amount actually spent" for the replacement home. It is likely that the Parks then realized the Belfor estimate would not be the basis for payment because the record indicates they did not furnish the purchase documents for the Idaho Falls home until five months later and after several requests by Safeco to furnish the same.

The Parks make a number of arguments that have some appeal but they simply cannot get over the explicit language employed in the insurance policy. The Parks seem to be arguing that their reasonable expectations should prevail over the language in the policy, but this Court long ago rejected the reasonable expectations doctrine, shortly after having adopted the same. In 1979, I found myself in the awkward position of presenting an insurance coverage case to the Idaho

Supreme Court shortly after it had disavowed the reasonable expectations doctrine. My written briefing, submitted before the disavowal, asserted that doctrine in support of coverage. According to the Court:

> The thorn of *Corgatelli v. Globe Life & Accident Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975), which made the adoption of that doctrine in Idaho a debatable question, was recently removed from the side of our jurisprudence. *Casey v. Highlands*, 100 Idaho 505, 600 P.2d 1387 (1979), decided after this appeal was brought, expressly rejected the doctrine of reasonable expectations in favor of traditional contract rules of construction.

*Foremost Ins. Co. v. Putizer*, 100 Idaho 883, 888, 606 P.2d 987, 992 (1980). My client, Robert C. Knievel, a/k/a Evel Knievel, lost out in that case and the Parks must similarly lose out in this case. However, I think they made a valiant enough effort to escape the award of attorney fees against them.