IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 42593

| | | |
|---|---|---|
| ANDREW and KIMBERLY KIRK, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants-Cross Respondents, | ) ) ) ) | |
| v. | ) ) | |
| ANN B. WESCOTT, f/k/a ANN B. MCELVEEN, | ) ) ) | Boise, August 2016 Term |
| Defendant-Respondent-Cross Appellant, | ) ) ) ) | 2016 Opinion No. 96 Filed: September 12, 2016 |
| and | ) ) | Stephen W. Kenyon, Clerk |
| Does 1 through 20, Unknown Claimants in and to the Property described as Lots 7 and 7A Block 1 of Glassford Heights Subdivision, Blaine County, Idaho, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. Robert J. Elgee, District Judge.

The judgment of the district court is reversed.

Evans Keane LLP, Boise, for appellants. Jed W. Manwaring argued.

Trout Law, PLLC, Boise, for respondent. Kim J. Trout argued.

_____

J. JONES, Chief Justice

This appeal arises out of an action for quiet title filed by Appellants Andrew and Kimberly Kirk ("the Kirks") against Ann Wescott. The Kirks bought a plot of land in Blaine County, Idaho, referred to as Lot 7 of Block 1 of the Glassford Heights Subdivision ("Lot 7"). After purchasing Lot 7, the Kirks found out that Lot 8 of the subdivision had been granted an

1

easement of access across the southeast corner of Lot 7. Wescott owns Lot 8. In 2012, the Kirks brought this action to quiet title, asking the court to terminate the easement encumbering their property.

Both parties moved for summary judgment, asking the court to interpret the deed granting the easement. The district court granted partial summary judgment to Wescott, concluding that the easement was created and none of the events that would trigger its termination had occurred. The Kirks then filed two motions to amend the complaint, both of which the district court denied. After a bench trial, the district court dismissed the Kirks' action for quiet title. Wescott sought an award of attorney fees, which the district court also denied. On appeal, the Kirks challenge the district court's grant of partial summary judgment to Wescott and the court's denial of their motions to amend the complaint. Wescott cross-appealed, challenging the district court's denial of her motion for attorney fees. Wescott also seeks an award of attorney fees on appeal.

# I.
# FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

In 1997, Leif Odmark owned Lots 7 and 8, which were undeveloped. Douglas and Charlotte Woodcock ("the Woodcocks") owned Lot 9, adjacent to the south side of Lot 8. Lot 7 is bordered on the east by Bench Road, which ends at the southeastern point of the lot. Neither Lot 8 nor Lot 9 has direct access to Bench Road. All three lots were bordered on the west by a strip of undeveloped land referred to as "Jones Lane," which separated the lots from U.S. Highway 75. Lots 8 and 9 were bordered on the east by land owned by the United States Forest Service ("USFS"). Originally, Blaine County platted access to Lots 8 and 9 from U.S. Highway 75 through Jones Lane. However, this would have required building roads through established wetlands. In 1998, the Woodcocks filed a Special Use Application with USFS, seeking an easement on USFS property bordering the eastern side of Lots 8 and 9. The application proposed an easement to use a forest road along the east side of Lots 8 and 9 to access Bench Road. The application also proposed granting access to Lot 8, thereby eliminating the need to build an access way through the wetlands in Jones Lane.

On April 4, 2000, while the Woodcocks' application was pending, Odmark sold Lot 8 to Wescott. The warranty deed stated that Odmark conveyed Lot 8 to Wescott "[t]ogether with a temporary Easement of Access described in the attached Exhibit 1." Exhibit 1 provided:

2

105 Jones Lane

This Warranty Deed shall include a temporary 25 foot wide Easement of Access (See plat map - Exhibit 2) over the Southeast corner of Lot 7 of Block 1 of the Glassford Heights Sub for access to Lot 8 of the Glassford Heights Sub. When/if Blaine County and The United States Forest Service provide a permanent access across USFS Lands to Lot 8, the owner of Lot 8 shall Quitclaim the Easement of Access back to Lot 7 within 30 days of written receipt thereof.

This Easement of Access shall become "In Effect" only upon receipt by the owner (of Lot 8) of written denial by the USFS for the owner (of Lot 8) to access Lot 8 across USFS lands on the Eastside of the property line (of Lot 8) and beginning at Bench Road. This Easement of Access shall remain "In Effect" only until Blaine County agrees to allow access to Lot 8 from Jones Lane. The owner's [sic] of Lot 8 shall Quitclaim the Easement of Access back to Lot 7 within one year or upon completion of the driveway, whichever occurs first.

On August 3, 2000, USFS granted an easement to the Woodcocks to use a forest road on the eastern side of Lots 8 and 9 to access Bench Road ("Woodcocks' USFS Easement"). The instrument provided that the "easement shall continue for as long as the property served is used for a single family residence," and that "the Grantor shall review terms and conditions of this easement at the end of each 30-year period from the date of issuance." However, the instrument also provided an expiration date of 12/31/2029. A description of the easement was provided in an Exhibit A that was attached to the instrument, entitled "Property Description [of] A 33' Wide Easement to Access Lots 8 & 9. Glassford Heights Subdivision."

Wescott and her former husband constructed a house on Lot 8 and originally used a dirt road running through Jones Lane to access the lot. In 2007, the then-owner of Lot 7 filed an application with Blaine County, asking the county to vacate Jones Lane. The County vacated Jones Lane, finding that allowing a right-of-way through the area could disrupt the wetlands and that the easement granted to the Woodcocks provided sufficient access to Lots 8 and 9.

Later that year, Wescott applied for and received an easement from USFS to use the forest road on the east side of Lots 8 and 9 to access Bench Road ("Wescott's USFS Easement"). The instrument provided that "[t]his easement shall expire on 12/31/2036," and "[a]t that time, if the Grantee still needs the road access to private property, the easement will be reissued for a period of 10 years." However, the instrument provided, further, "that the Grantor shall review the terms and conditions of this easement at the end of each 30-year period from the date of issuance, and may incorporate in the easement such new terms, conditions, and stipulations as existing and prospective conditions may warrant." Attached to the instrument as Exhibit A was a description of the easement—the same description attached to the Woodcocks' USFS Easement.

Thereafter, Wescott constructed a driveway on Lot 8 exiting onto the forest road and has since used the forest road to access the property. Wescott has never used the deeded Easement of Access across Lot 7. In 2010, the Kirks bought Lot 7. The Kirks did not become aware of the Easement of Access until several months after they purchased the property.

## B. Procedural Background

On August 3, 2012, the Kirks filed this action for quiet title against Wescott, seeking to terminate the Easement of Access. The Kirks alleged that Wescott was obligated to quitclaim the Easement of Access back to the owner of Lot 7 within 30 days of receiving the easement from USFS. The Kirks additionally alleged that Wescott was obligated to quitclaim the Easement of Access back to the owner of Lot 7 within one year of the easement being granted or upon completion of the driveway, whichever occurred first.

Wescott filed an answer and moved for summary judgment, alleging that Wescott's USFS Easement is not "permanent" and did not trigger the requirement that she quitclaim the Easement of Access back to the owner of Lot 7. Additionally, Wescott alleged that the requirement that she quitclaim the Easement of Access back "within one year or upon completion of the driveway" could only be triggered by Blaine County allowing access to Lot 8 through Jones Lane, which could not occur as Blaine County had vacated Jones Lane in 2007. Overall, Wescott argued that the court should not terminate the Easement of Access because Lot 8 would be left landlocked if USFS failed to renew Wescott's USFS Easement. The Kirks filed a cross-motion for summary judgment, alleging that the Easement of Access was never in effect because Wescott had not received a written denial from the USFS and, even if it was in effect, the easement was to terminate within one year of its creation. The Kirks also alleged that Wescott abandoned the Easement of Access by failing to use it and by taking affirmative actions to acquire access to Lot 8 through alternative means.

The district court heard argument on the parties' motions for summary judgment on March 31, 2014. As relevant to this appeal, the only evidence on the record were copies of the Easement of Access and Wescott's USFS Easement, affidavits from experts interpreting those documents, Wescott's deposition testimony, and evidence of Blaine County vacating Jones Lane. Neither party included extrinsic evidence of the parties' intent when drafting the Easement of Access or a copy of the Woodcocks' USFS Easement.

4

At the March 31 hearing, the district court ruled from the bench, concluding as a matter of law that: (1) the Easement of Access was granted and is attached to Lot 7, although the right to use the easement will not arise until Wescott receives a written denial from USFS; (2) Wescott's USFS Easement was not "permanent" and did not trigger the requirement that Wescott quitclaim the Easement of Access back to the owner of Lot 7; (3) the statement that the easement be terminated "within one year or upon completion of the driveway" was intended to be triggered by Blaine County providing access through Jones Lane or USFS providing permanent access, and neither occurred; and (4) Wescott did not abandon the Easement of Access. The district court stated that it originally had planned to deny both motions for summary judgment and ask the parties to find more evidence of the drafting parties' intent. However, the court stated that the parties had represented that there was no reason to have a trial on the issue of intent because there was no other evidence available. The court then told the parties that it would reserve ruling and allow the matter to go to trial if the parties believed there was other relevant evidence the court had not considered.

At this point, counsel for the Kirks stated that the Woodcocks' USFS Easement might provide some evidence of the drafting parties' intent, as it was pending when the Easement of Access was drafted and the easement description specifically refers to Lot 8. Counsel argued that, unlike Wescott's USFS Easement, the Woodcocks' USFS Easement was to continue as long as Lot 9 was used for a single-family residence. The court asked the Kirks' counsel to approach USFS and see if it would change the easement granted to Wescott to conform to the Woodcocks' USFS Easement. At the end of the hearing, the Court granted partial summary judgment to Wescott on the above issues, but concluded that it would still leave trial open on the issue of whether USFS would change Wescott's USFS Easement to be permanent and whether equity supported terminating the easement.

On April 18, 2014, the Kirks filed a motion to amend the complaint. They sought to add references to the Woodcocks' USFS Easement, arguing that it was the "permanent access" referred to in the Easement of Access and that its issuance triggered the requirement that the owner of Lot 8 quitclaim the easement back to Lot 7. The Kirks argued that since the court's ruling on summary judgment they had obtained evidence that the Woodcocks' USFS Easement was meant to benefit Lot 8 and provide access to Lot 8 via the forest service road. Wescott opposed the Kirks' motion to amend, arguing that the motion was untimely and that the evidence

5

sought to be presented was parol evidence. Wescott also argued that the Woodcocks' USFS Easement was not permanent because it included an expiration date. The district court held a hearing on the Kirks' motion to amend on May 5, 2014. The court denied the Kirks' motion, concluding that Wescott was not a grantee or beneficiary under the terms of the Woodcocks' USFS Easement. Additionally, the court concluded that even if the Woodcocks' USFS Easement applied to Lot 8, it was not permanent.

On July 14, 2014, the Kirks filed a renewed motion to amend the complaint. The Kirks asked the court to reconsider its previous motion to amend, alleging that Wescott had untimely produced documents after the May 5 hearing that indicated that the "permanent access" referred to in the Easement of Access was the Woodcocks' USFS Easement. The Kirks alleged that they had requested pertinent documents from Wescott on May 7, 2013, but received no documents in response. On February 26, 2014, the Kirks sent Wescott a letter requesting documents, and Wescott responded by stating that the documents requested had been produced as exhibits to her expert's opinions.

On July 9, 2015—over two years after the initial request—the Kirks received a supplemental response to their request for documents. Included was a letter from Odmark to USFS supporting the Woodcocks' application for an easement from USFS and a staff report from the Blaine County Commissioners regarding the vacation of Jones Lane in 2007. Odmark's letter stated that he supported the Woodcocks' request for a permanent easement from the USFS so access to Lots 8 and 9 would not have to be provided through Jones Lane, which could disturb wetlands. The staff report requested that Blaine County vacate Jones Lane in part because developing access to Lots 8 and 9 through Jones Lane would disturb wetlands and was unnecessary because "[a]ccess to Lots 7, 8 and 9 is established off of Bench Road pursuant to a road easement granted by the U.S. Forest Service." This staff report seems to refer to the Woodcocks' USFS Easement because it was produced before Wescott had requested an easement from USFS. Wescott opposed the Kirks' renewed motion to amend, alleging that the documents were irrelevant because the court had already ruled that the Woodcocks' USFS Easement did not benefit Lot 8 and was not permanent.

The bench trial began on July 23, 2014. At the beginning of trial, the Kirks asked the court to consider their renewed motion to amend and reschedule the trial if granted. The court expressed concern that Wescott had failed to timely produce the documents. However, the court

6

denied the renewed motion to amend, finding that the documents were not relevant in light of the court's prior ruling that the Woodcocks' USFS Easement was not permanent and did not benefit the owner of Lot 8. After the district court denied the Kirks' motion to amend, a short trial was held, limited to evidence concerning the equity of terminating the Easement of Access. The district court concluded that the equities favored not terminating the easement. The Kirks' counsel also represented that he had not been able to reach an agreement with USFS to give Wescott permanent access to the forest road. The district court entered judgment dismissing the quiet title action on August 25, 2014. The Kirks timely appealed, challenging the district court's grant of partial summary judgment to Wescott and the denial of their motions to amend the complaint.

Wescott filed a memorandum of costs, seeking an award of attorney fees under Idaho Code section 12-121. The district court heard argument on Wescott's motion and ruled that Wescott was not entitled to attorney fees under section 12-121 because the action was not pursued frivolously. Wescott filed a motion for reconsideration of the court's order denying fees, which the court denied. Wescott timely filed a notice of cross-appeal, challenging the district court's denial of her motion for attorney fees.

## II.
## ISSUES ON APPEAL

1. Whether the Easement of Access is void for lack of an adequate legal description.
2. Whether the district court erred in granting partial summary judgment to Wescott.
3. Whether the district court abused its discretion in denying the Kirks' motions to amend the complaint.
4. Whether the district court abused its discretion in denying Wescott's motion for attorney fees under Idaho Code section 12-121.
5. Whether Wescott is entitled to attorney fees on appeal under Idaho Code section 12-121.

## III.
## STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court applies the same standard of review used by the district court in ruling on the motion." *Idaho Dev., LLC v. Teton View Golf Estates, LLC*, 152 Idaho 401, 404, 272 P.3d 373, 376 (2011) (quoting *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 441, 235 P.3d 387, 391 (2010)). "A grant of summary judgment is warranted where 'the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

7

entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(c)). "The fact that both parties file motions for summary judgment does not necessarily mean that there are no genuine issues of material fact." *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 123, 206 P.3d 481, 487 (2009).

"The grant or denial of leave to amend after a responsive pleading has been filed is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of that discretion." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991). Additionally, "[t]he district court's determination as to whether an action was brought or defended frivolously will not be disturbed absent an abuse of discretion." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014).

## ANALYSIS

### A. We decline to address whether the Easement of Access is void for lack of a sufficient legal description.

On appeal, the Kirks allege that the district court erred in dismissing their claim because the Easement of Access is void for lack of an adequate legal description. However, the Kirks never asked the district court to determine whether the description of the easement was legally sufficient. As such, the district court never ruled on this issue. "It is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error." *Whitted v. Canyon Cty. Bd. of Comm'rs*, 137 Idaho 118, 121, 44 P.3d 1173, 1176 (2002). "Hence, issues not raised below but raised for the first time on appeal will not be considered or reviewed." *Id.* at 122, 44 P.3d at 1177. Therefore, we decline to address this issue on appeal.

### B. The district court erred in its interpretation of the Easement of Access on summary judgment.

In interpreting the Easement of Access, the district court looked at each paragraph separately. The first paragraph of the Easement of Access states in part: "When/if Blaine County and The United States Forest Service provide a permanent access across USFS Lands to Lot 8, the owner of Lot 8 shall Quitclaim the Easement of Access back to [the owner of] Lot 7 within 30 days of written receipt thereof." Wescott's USFS Easement stated that "[t]his easement shall expire on 12/31/2036," and "[a]t that time, if the Grantee still needs the road access to private property, the easement will be reissued for a period of 10 years (or the estimated remaining life

8

of the project, whichever is less)." The district court concluded as a matter of law that the requirement that Wescott quitclaim the easement back to the owner of Lot 7 would only be triggered if USFS provided permanent access. The district court did not expressly state a definition of the term "permanent," but it concluded that Wescott's USFS Easement was not permanent because it had an expiration date and was revocable by USFS.

The second paragraph of the Easement of Access provides that:

> This Easement of Access shall become "In Effect" only upon receipt by the owner (of Lot 8) of written denial by the USFS for the owner (of Lot 8) to access Lot 8 across USFS lands on the Eastside of the property line (of Lot 8) and beginning at Bench Road. This Easement of Access shall remain "In Effect" only until Blaine County agrees to allow access to Lot 8 from Jones Lane. The owner's [sic] of Lot 8 shall Quitclaim the Easement of Access back to Lot 7 within one year or upon completion of the driveway, whichever occurs first.

In ruling on the parties' summary judgment motions, the district court—without explanation—concluded that the easement had attached to Lot 7 but the right to use the easement would not arise until the owner of Lot 8 receives a written denial from USFS. The district court then focused on the last sentence of the easement. It concluded that the easement was ambiguous as to whether the requirement that the owner of Lot 8 quitclaim the easement back to the owner of Lot 7 "within a year or upon completion of the driveway" was intended to run from the time the easement was granted or upon some event occurring. However, the district court concluded that it should interpret the deed on summary judgment, stating:

> Part of this is the parties' suggestion that I'm not going to get any better decision if we have a trial. Counsel seem to agree on that. I was really prepared when I came in here to say go find some more evidence of intent, but I think both counsel are saying we can't.

The district court then made findings of fact as to the drafting parties' intent, concluding that the easement was granted because the parties recognized that Lot 8 would be landlocked if access were not granted by USFS or Blaine County. According to the district court, the parties therefore could not have intended to terminate the easement within one year of the grant if the owner of Lot 8 had not received any other form of access to the property. The court concluded that the parties must have intended that the owner of Lot 8 quitclaim the easement back to the owner of Lot 7 within a year or upon completion of the driveway after USFS gave permanent access or Blaine County gave access through Jones Lane.

On appeal, the Kirks contend that the district court erred in granting Wescott partial summary judgment because the Easement of Access was ambiguous and the parties should have had an opportunity to present extrinsic evidence of the drafters' intent at trial. The Kirks also challenge the district court's conclusion that the Easement of Access was attached to Lot 7, contending that the easement was not to go into effect until Wescott received a "written denial" from USFS. Additionally, the Kirks allege that the district court erred in concluding that the requirement that the easement be terminated after "one year or upon completion of the driveway" was intended to be triggered by Blaine County providing access through Jones Lane or Wescott receiving permanent access from USFS.

"When this Court interprets or construes a deed, 'the primary goal is to seek and give effect to the real intention of the parties.'" *Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012) (quoting *Porter v. Bassett*, 146 Idaho 399, 404, 195 P.3d 1212, 1217 (2008)). "If the language of a deed is ambiguous, determining the parties' intent is a question of fact and may only be settled by a trier of fact." *Hoch v. Vance*, 155 Idaho 636, 639, 315 P.3d 824, 827 (2013). "The trier of fact must then determine the intent of the parties according to the language of the conveyance and the circumstances surrounding the transaction." *Marek v. Lawrence*, 153 Idaho 50, 53, 278 P.3d 920, 923 (2012) (quoting *Porter*, 146 Idaho at 404, 195 P.3d at 1217). "However, when the language of a deed is unambiguous, the intention of the parties is a matter of law ascertained from the deed's plain language without the aid of extrinsic evidence." *Hoch*, 155 Idaho at 639, 315 P.3d at 827. Whether a legal instrument is ambiguous is a legal question, over which this Court exercises free review. *Cool v. Mountainview Landowners Coop. Ass'n, Inc.*, 139 Idaho 770, 772, 86 P.3d 484, 486 (2004). "Ambiguity may be found where the language of the deed is subject to conflicting interpretations." *Hoch*, 155 Idaho at 639, 315 P.3d at 827 (quoting *Marek*, 153 Idaho at 53, 278 P.3d at 923). The fact that the parties present differing interpretations does not necessarily mean an ambiguity is present. *Id*. "To determine whether a deed is ambiguous, it must be reviewed as a whole." *Id.*

The initial issue before this Court is whether the Easement of Access was ambiguous. We hold that the deed granting the Easement of Access was not ambiguous, and from the plain language, the easement was intended to terminate one year from delivery of the deed.

As a preliminary matter, the deed created an easement. "No specific words are necessary to create an express easement, but there must be clear intention to establish a servitude." *Armand*

*v. Opportunity Mgmt. Co.*, 155 Idaho 592, 600, 315 P.3d 245, 253 (2013). The deed specifically states that it conveys Lot 8 along with a "temporary Easement of Access described in the attached Exhibit 1." The description states: "This Warranty Deed shall include a temporary 25 foot wide Easement of Access (See plat map - Exhibit 2) over the Southeast corner of Lot 7 of Block 1 of the Glassford Heights Sub for access to Lot 8 of the Glassford Heights Sub." Thus, it is clear that the deed was intended to create a temporary easement for access on Lot 7 for the benefit of Lot 8.

Although the deed creates a temporary easement, it also provides that the easement was to become "'In Effect' only upon receipt by the owner (of Lot 8) of written denial by the USFS for the owner (of Lot 8) to access Lot 8 across USFS lands on the Eastside of the property line (of Lot 8) and beginning at Bench Road." "In effect" is defined as "[i]n operation; in force." Oxford Dictionaries (2016).[1] The plain language of the easement provides that it would not come into effect until a specific event occurred in the future—the owner of Lot 8 receiving a written denial from USFS for an easement across USFS lands. Neither party has argued that a deed may not grant a "future easement," nor has this Court addressed this issue.

An express easement creates an interest in real property. *Machado*, 153 Idaho at 218, 280 P.3d at 721. This Court has long recognized that persons may grant a future interest in real property. *See Wilson v. Linder*, 18 Idaho 438, 445–46, 110 P. 274, 276 (1910). Other jurisdictions have concluded that although an express easement usually creates rights that are to take effect in the present, there is no rule of law prohibiting a grant of an easement to take effect in the future. *See* D.A. Norris, Annotation, *Commencement and Duration of Express Easement as Affected by Provision in Instrument Creating It*, 154 A.L.R. 5 (1945). "An express easement may be created subject to a condition precedent which does not vest or become effective until the condition has occurred or has been performed." *Id*. As an easement is an interest in real property and this Court has long recognized that a deed may grant a future interest in real property, we see no reason why a deed may not create a future easement.

Idaho Code section 55-106 provides that "a future interest is contingent whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." The deed in this case provides that the Easement of Access would only become "in effect" if the owner of Lot 8

---

[1] Available at http://www.oxforddictionaries.com/us/definition/american_english/in-effect.

received a written denial from USFS for an easement across USFS lands. There is no provision in the easement expressly requiring the owner of Lot 8 to apply for an easement with USFS, nor any indication that the owner of Lot 8 would receive a written denial from USFS within a certain time. Whether the owner of Lot 8 will ever receive a written denial from USFS is uncertain. Therefore, the deed granted the owner of Lot 8 a contingent future easement.[2]

The deed provides three circumstances that would terminate the Easement of Access. First, "[w]hen/if Blaine County and The United States Forest Service provide a permanent access across USFS Lands to Lot 8, the owner of Lot 8 shall Quitclaim the Easement of Access back to [the owner of] Lot 7 within 30 days of written receipt thereof." Reading this provision alongside the provision providing that the easement would only go into effect if the owner of Lot 8 received a written denial form USFS, it is clear that the drafters contemplated that the owner of Lot 8 would seek access from USFS, even if not expressly required to do so. It is also clear that the easement would not have to be "in effect" for this event to trigger termination. If the owner of Lot 8 received written confirmation from USFS granting permanent access, the owner of Lot 8 would be required to quitclaim the easement back to Lot 7 within 30 days, and the easement would never go into effect. Alternatively, if USFS sent the owner of Lot 8 a written denial, the temporary Easement of Access would go into effect.

Second, "[t]his Easement of Access shall remain 'in Effect' only until Blaine County agrees to allow access to Lot 8 from Jones Lane." This provision provides a defeasance clause, limiting the time the easement would remain in effect. Under this provision, the temporary

---

[2] It appears that the district court reached the same conclusion in stating that the easement had "attached" to Lot 7, but the right to use the easement had not arisen. However, the district court further concluded that the Easement of Access did not contain a temporal limit and interpreted the deed to create a contingent future interest based on a condition that may never occur. Although we hold that a deed may create a future interest in an easement, we note that such an easement may run afoul of public policy when the easement is conditioned on an event that may never occur. Under the district court's interpretation, the Easement of Access could potentially never go into effect yet remain as a cloud on Lot 7's title indefinitely. "[E]asements designed to come into existence upon the fulfillment of a condition precedent are contingent future interests that may run afoul of the [Rule Against Perpetuities]." JAMES M. ELY, JR. & JON W. BRUCE, THE LAW OF EASEMENTS & LICENSES IN LAND § 10:3 (2016). Idaho does not recognize the Rule Against Perpetuities. I.C. § 55-111. However, Idaho Code section 55-111A(1) provides: "The absolute power of alienation of property cannot be suspended by any limitation or condition whatever, for a longer permissible period than during the continuance of the lives of the persons in being at the creation of the limitation or condition, and twenty-five (25) years thereafter." Arguably, a contingent future easement that is conditioned on an event not certain to occur within 25 years after the lives of the persons in being at the creation of the condition would be an unreasonable restraint on alienation under section 55-111A. The parties did not argue this issue on appeal. As discussed further in this opinion, we interpret the deed to impose a one-year time limit on the Easement of Access, eliminating the need to address whether an indefinite contingent future easement, like that found by the district court, would be unenforceable.

easement would only remain in effect from the time the owner of Lot 8 received a written denial from USFS until Blaine County agreed to allow access to Lot 8 through Jones Lane. Unlike the first termination condition, which provided that the owner of Lot 8 would quitclaim the easement back to Lot 7 within 30 days, this condition provides that the easement would only remain in effect until Blaine County agreed to provide access, meaning that the easement would terminate automatically upon that event occurring.

Third, "[t]he owner's [sic] of Lot 8 shall Quitclaim the easement of Access back to Lot 7 within one year or upon completion of the driveway, whichever occurs first." The easement does not expressly state when the year time limit was to start running. Wescott argues that the district court properly concluded this condition could not be triggered until the owner of Lot 8 received access from Blaine County through Jones Lane. We disagree. There is nothing in the plain terms of the easement that supports this interpretation. There is no language in this provision requiring that the easement go into effect before this condition could be triggered. It does not state that the easement will remain "in effect" for one year or upon completion of the driveway, whichever occurs first. Additionally, directly prior, the deed provides that the easement shall remain in effect "*only* until Blaine County agrees to allow access." (emphasis added). "Only" is defined as "[a]nd no one or nothing more besides; solely or exclusively." Oxford Dictionary (2016).[3] Under its plain terms, the easement was to remain in effect only until Blaine County agreed to allow access through Jones Lane and no longer. Interpreting the one-year timeframe to run from the time Blaine County agreed to provide access would run contrary to the deed's plain language.

Both the first and third provisions described above require the owner of Lot 8 quitclaim the easement back to the owner of Lot 7, while the second provision speaks of a time frame during which the easement remains "in effect." The difference in wording indicates a difference in meaning. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 165 (3d Cir. 2012) (applying the same principle to the interpretation of a statute). The two provisions requiring quitclaiming the easement would apply regardless of whether the easement went into effect. Accordingly, the one-year timeframe would be effective even if the easement was never "in effect." As discussed above, the deed contemplated that the owner of Lot 8 would attempt to obtain access from USFS. The year limitation provides impetus for the owner of Lot 8 to

---

[3] Available at http://www.oxforddictionaries.com/us/definition/american_english/only.

promptly make such a request. This provision also guarantees that the Easement of Access would only temporarily encumber Lot 7. Because the one-year time frame does not have an express beginning date and the provision does not reference another event in the easement, the only reasonable interpretation is that the one-year timeframe was intended to run from the time the deed was effective. A deed is effective upon delivery. *Barmore v. Perrone*, 145 Idaho 340, 344, 179 P.3d 303, 307 (2008). The deed granting the Easement of Access was conveyed in 2000. Accordingly, the one-year period has long since passed.

We hold that the district court erred in its interpretation of the deed, and conclude that under the express terms of the Easement of Access, it was intended to terminate one year from the time the deed was delivered. We therefore reverse the district court's judgment in favor of Wescott.

As we conclude that the Easement of Access terminated one year after the deed was delivered, we need not address whether the district court erred in concluding that Wescott's USFS easement did not provide "permanent access"[4] or whether the court erred in denying the Kirks' motions to amend.

### C. We uphold the district court's denial of Wescott's request for attorney fees under Idaho Code section 12-121.

On appeal, Wescott challenges the district court's denial of her request for attorney fees under Idaho Code section 12-121. Idaho Code section 12-121 only provides for attorney fees to a prevailing party. Because we reversed the judgment of the district court, Wescott has no longer prevailed and is not entitled to attorney fees. Accordingly, we uphold the district court's denial of Wescott's request for attorney fees.

### D. Wescott is not entitled to fees on appeal under Idaho Code section 12-121.

Wescott seeks an award of attorney fees on appeal under Idaho Code section 12-121. Wescott did not prevail on appeal and is not entitled to attorney fees under section 12-121.

---

[4]However, we note concern that Wescott's counsel failed to timely produce documents which may have supported the Kirks' contention that the Woodcocks' USFS Easement—the application for which was pending at the time the deed granting the Easement of Access was drafted—was the permanent access contemplated by the drafting parties. Counsel represented at the hearing on summary judgment that there was no other evidence that could aid the court in interpreting the Easement of Access, while in fact Wescott's counsel had relevant documents that he failed to produce. As a consequence, the Kirks and the district court were unaware of information that may have aided the court in ruling on summary judgement. The proceedings in this case may very well have been different had Wescott's counsel exercised due diligence in reviewing and producing these documents.

## V.
## CONCLUSION

The judgment of the district court in favor of Wescott is reversed. We remand to the district court to enter judgment in favor of the Kirks. Costs to the Kirks on appeal.

Justices EISMANN, BURDICK, W. JONES, and HORTON CONCUR.