IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42566

DUANE KEMMER, KAREN KEMMER, and )
TIM DOLPH, )
                                                       )
    Plaintiffs-Appellants, )
                                                       )
v. )               **Boise, December 2016 Term**
                                                       )
BOB NEWMAN, PHYLLIS MILLER, and )   **2016 Opinion No. 157**
RUTH SMITH, )
                                                       )   **Filed: December 30, 2016**
    Defendants-Respondents, )
                                                       )   **Stephen W. Kenyon, Clerk**
and )
                                                       )
BOB QUINN, )
                                                       )
    Defendant. )

Appeal from the District Court of the First Judicial District, State of Idaho,
Bonner County. Hon. Barbara A. Buchanan, District Judge.

District court decision, <u>reversed.</u>

James, Vernon & Weeks, Coeur d'Alene, for appellants. Daniel M. Keyes
argued.

Featherston Law Firm, Sandpoint, for respondents. Brent C. Featherston argued.

_____

BURDICK, Justice

    Duane Kemmer, Karen Kemmer, and Tim Dolph (Appellants) appeal the Bonner County district court's decision that Bob Newman, Phyllis Miller, and Ruth Smith (Respondents) were properly elected as directors of New Life Missions, Inc. church (NLM) at a special membership meeting. On appeal, Appellants argue the district court erred in reaching its decision because the special meeting was improperly called in violation of the Idaho Nonprofit Corporation Act. We reverse.

<h2 style="text-align:center">I.    FACTUAL AND PROCEDURAL BACKGROUND</h2>

    NLM was incorporated as a non-profit corporation in 2001 by Jack Kirk, Ray Breeden, Kenneth Ewing, and Alan Kirk, all of whom served on the initial NLM Board of Directors

1

(Board). NLM's Bylaws were also adopted in 2001 by the same men. The NLM Bylaws require that a membership roll of the "voting membership" be kept. Testimony at trial was clear that no such roll was ever kept. The NLM Bylaws also called for monthly meetings of the Board and an annual membership meeting to elect directors and conduct other church business. In practice, however, those meetings did not occur.

In August 2009, NLM was administratively dissolved for failure to timely file an annual report with the Idaho Secretary of State. That same month, Karen Kemmer, acting as secretary/treasurer of NLM, filed an application for reinstatement, which was accepted and approved by the Idaho Secretary of State. The reinstatement report for NLM shows that at the time of reinstatement, James Tapani was president/senior pastor,[1] Karen Kemmer was secretary/treasurer, and Ruth Smith, Duane Kemmer, and Tim Dolph were directors. In February 2010, Tapani resigned as senior pastor.

In March 2010, the Board met and discussion was held on who should be the new senior pastor. Bob Newman was asked if he would be interested in serving as the senior pastor, to which he replied that he would. Newman began serving in the senior pastor role from that time forward; however, no formal vote on Newman's appointment as senior pastor was taken by the Board or the voting membership. In May 2010, the Board scheduled a meeting with Ken Ewing to discuss the possibility of merging NLM with Ewing's church, the Church on the Solid Rock.

Following the meeting with Ewing, Kemmer[2] made statements to Newman, Smith, and others that he no longer wanted to be a Board member. However, Kemmer attended meetings on July 17 and 21, 2010. Sometime in July 2010, although not approved by the Board, Dolph made a statement to members of NLM that the Board had decided to merge NLM with Ewing's church. Evidence showed that the members in attendance at the meeting did not respond favorably to Dolph's announcement, and Dolph left the meeting upset. Thereafter, Smith, acting on her own, called for a member's special meeting to be held on August 1, 2010. The special meeting was announced from the church pulpit for three consecutive Sundays—July 18, 25, and August 1, 2010. Kemmer and Dolph both assert that they had no knowledge of the announcements or the August 1, 2010 special meeting. At the special meeting, Phyllis Miller, Bob Newman, and Ruth Smith were elected as directors.

---

[1] Under the NLM Bylaws, the president is also the senior pastor. Going forward any reference to senior pastor includes reference to the office of president.

[2] From this point on, "Kemmer" will refer to Duane Kemmer.

Appellants brought suit on December 7, 2011, alleging that Smith was not authorized to call the August 1, 2010 special meeting, and, therefore, the election of directors at that meeting was invalid. In May 2014, the district court held a bench trial, and on August 8, 2014, issued its Memorandum Decision. In its decision, the district court ruled that Respondents were the rightful directors of NLM because the August 1, 2010 special meeting was properly called and Newman had the authority to approve the special meeting. The district court found that both Kemmer and Dolph had "resigned and/or absented themselves" as directors. Thus, the district court held that Smith, as the only remaining director, was authorized under Idaho Code section 30-3-47[3] to call a special meeting. The district court also found that during a Board meeting held on March 28, 2010, Newman was appointed senior pastor of NLM. Appellants timely appeal.

## II.     STANDARD OF REVIEW

This Court exercises free review over the district court's conclusions of law, but will not set aside a finding of fact unless it is clearly erroneous. *Insight LLC v. Gunter*, 154 Idaho 779, 783, 302 P.3d 1052, 1056 (2013). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 650, 39 P.3d 588, 590 (2001). Rather, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. *Miller v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 139 Idaho 825, 832, 87 P.3d 934, 941 (2004). Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Id.*

## III.     ANALYSIS

Appellants raise two issues on appeal: (A) whether Newman was properly appointed as senior pastor, and (B) whether Smith improperly called the August 1, 2010 special meeting.

### A.  Newman was not properly appointed as senior pastor.

The bylaws of a corporation are "equivalent to contracts among the members of the association" and are binding on its members. *Twin Lakes Vill. Prop. Ass'n, Inc. v. Crowley*, 124 Idaho 132, 135, 857 P.2d 611, 614 (1993); *accord* I.C. § 30-3-21(3) ("[Bylaws] shall constitute and be a contract between the corporation and each patron, and both the corporation and the patrons are bound by such contract, as fully as though each patron had individually signed a

---

[3] All citations to the code are to the 2010 version, which was in effect at the time of trial. The Idaho Nonprofit Corporation Act was repealed July 1, 2015, by S.L. 2015, ch. 337, § 3, and has been recodified at I.C. § 30-30-101 *et seq.*

separate instrument containing such terms and provisions."). Actions taken in violation of a corporation's bylaws are void. *Twin Lakes Vill. Prop. Ass'n, Inc.*, 124 Idaho at 136, 857 P.2d at 615 (declaring an amendment to the bylaws that violated the original bylaws was void); *Glahe v. Arnett*, 38 Idaho 736, 741, 225 P. 796, 798 (1924) (noting that actions taken at a meeting called in violation of the bylaws were void).

In the present case, the NLM Bylaws clearly lay out the procedure for filling a vacancy in the position of senior pastor:

> Section 4. Vacancy: In the event of a vacancy in the senior pastorate, a pastor shall be selected in the following manner:
>
> 1. The board of directors shall immediately convene and assign one of the associate pastors as a temporary replacement for the senior pastor.
>
> 2. A roster of candidates shall be presented to the board of directors for review of their scriptural qualifications. Upon acceptance of qualification, each candidate will present themselves to the voting membership.
>
> 3. After the voting membership has had an opportunity to review all candidates set forth by the board of directors, a special meeting will be called and a vote will be taken, with a majority vote required for the final appointment of the new senior pastor.

There is no evidence that Newman was ever voted on by the membership. Rather, the only evidence is that Newman was asked if he was interested in being pastor at the March 28, 2010 Board meeting and that Newman replied in the affirmative.[4] This is not sufficient evidence for a finding that Newman was properly appointed as the senior pastor.[5] Because there is no evidence that the NLM Bylaws were complied with, we reverse the district court's finding that Newman was appointed as senior pastor on March 28, 2010.

---

[4] The minutes of that meeting reflect the following: "Then we asked if Bob Quinn would fill in for Thursday night meetings. He said yes. And ask[ed] Bob Newman if he would be interested in being the pastor and he said he would be interested in being the pastor."

[5] Indeed, even Smith testified that Newman was only appointed as a temporary pastor at the March 28, 2010 meeting:

> Q: And isn't it true that Bob Newman was appointed as a temporary pastor?
> A: At first, yes, and then permanent.
> Q: Pardon?
> A: At first, yes. And then permanent.
> Q: Okay. I'm talking March 28th, he was appointed only as a temporary pastor. Correct?
> A: Yes.
> Q: And you're saying permanently. You mean on August 1; correct?
> A: Yes."

**B. The district court erred in finding that the August 1, 2010 special meeting was properly called.**

In its Memorandum Decision, the district court found that Kemmer and Dolph "resigned and/or absented themselves" as directors, and consequently, that Smith was the only remaining director and member of the Board. Thus, the district court ruled Smith, acting as the sole remaining Board member, was authorized under Idaho Code section 30-3-47 to call the August 1, 2010 special meeting. We disagree.

1. Kemmer and Dolph did not resign and were not removed from their positions as directors of NLM.

The determination of whether a director has resigned is a factual issue. *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 278, 561 P.2d 1299, 1311 (1977) ("Whether a director has resigned, or has ceased to be qualified to hold or to hold title to, office as a director, are questions of fact to be determined from the circumstances of each case."). If a trial court's "findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal." *Credit Suisse A.G. v. Teufel Nursery, Inc.*, 156 Idaho 189, 195, 321 P.3d 739, 745 (2014) (quoting *Franklin Bldg. Supply Co. v. Sumpter*, 139 Idaho 846, 849, 87 P.3d 955, 958 (2004)). Substantial evidence is "relevant evidence as a reasonable mind might accept to support a conclusion." *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013).

Idaho Code section 30-3-69(1) states: "A director may resign at any time by delivering written notice to the board of directors, its chairman, or the corporation." I.C. § 30-3-69(1). The permissive term "may"  applies to the right of a director to "resign at any time." The remainder of the sentence specifies what the director must do in order to resign—"by delivering written notice to the board of directors, its presiding officer or to the president or secretary." Thus, although a director "may resign at any time," the exclusive method for doing so is "by delivering written notice . . . ." I.C. § 30-3-69(1).[6] *E.g.*, *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 247, 61 P.3d 601, 604 (2002) ("A cardinal rule of statutory construction is that where a

---

[6] In doing so we are cognizant of other jurisdictions holding otherwise. *E.g.*, *Biolase, Inc. v. Oracle Partners, L.P.*, 97 A.3d 1029, 1033–34 (Del. 2014) (holding that similar language in Delaware's corresponding statute allows directors to resign by other means). However, we simply see no reason to expand the plain language of Idaho Code section 30-3-69(1). *E.g.*, *State v. Leary*, 160 Idaho 349, 372 P.3d 404, 407 (2016) ("When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect." (quoting *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015))).

statute is plain, clear and unambiguous, courts are constrained to follow that plain meaning, and neither add to the statute nor take away by judicial construction.").

Here, it is undisputed that neither Kemmer nor Dolph ever submitted a written resignation.[7] Accordingly, there is no evidence to support the district court's factual finding that Kemmer and Dolph resigned before Smith called the August 1, 2010 special meeting.

In addition to resignation, the district court also found that Kemmer and Dolph resigned by absenting themselves from the Board. Initially, we note that absence from board meetings is only grounds for removal of a director when specifically provided for in the corporate documents. I.C. § 30-3-70(9). Here, there is no such provision in the NLM Bylaws or Articles. The NLM Bylaws do, however, allow for removal of a director "by a unanimous vote of the remaining [board] members" regardless of whether the director has been absent from board meetings. However, there is no evidence in the record that such a vote took place before the August 1, 2010 special meeting. Furthermore, the district court found that "no Board meetings took place from March 28, 2010, until after the special meeting and election of new Board members on August 1, 2010 . . . ." Neither party disputes this finding. Thus, it is difficult to see how Kemmer or Dolph, who were both present at the March 28, 2010 meeting, could have absented themselves from the Board before the August 1, 2010 special meeting when there were no Board meetings to be absent from.

Therefore, because there is no evidence in the record to support a finding that Kemmer or Dolph ever tendered a written resignation or absented themselves from the Board, the district court's finding that Kemmer and Dolph "resigned and/or absented themselves" is reversed.

2. Smith was not authorized to call the August 1, 2010 special meeting.

Idaho Code section 30-3-47 provides:

(1) A corporation with members shall hold a special meeting of members:

 (a) on call of its board or the person or persons authorized to do so by the articles or bylaws; or

 (b) Except as provided in the articles or bylaws of a religious corporation if the holders of at least ten percent (10%) of the voting power of any corporation sign, date and deliver to any corporate officer one (1) or more

---

[7] Kemmer testified that he never tendered a written resignation. This is not disputed by Respondents; rather, they assert the district court was correct in determining that Kemmer verbally resigned. Smith testified that Dolph never resigned his position by written or verbal notice. This too is not disputed by Respondents; rather, they assert that Dolph resigned by his actions.

written demands for the meeting describing the purpose or purposes for which it is to be held.

I.C. § 30-3-47.

The NLM Bylaws provide in pertinent part:

Special meetings of the voting membership may be called by or at the request of two-thirds (2/3) of the voting membership, and shall take place at the principal place of worship for New Life Missions.

Notice of the annual, regular, or and special meeting of the voting membership shall be given by oral notice at three consecutive Sunday services. The business to be transacted at the meeting need not be specified in the notice, unless specifically required by law or these bylaws.

Here, no membership roster was kept until after August 1, 2010. Thus, calling the August 1, 2010 special meeting at the request of two-thirds of the voting membership was not possible. Consequently, the only method available to call the August 1, 2010 special meeting was "on call of [NLM's] board" as provided under Idaho Code section 30-3-47(1)(a). The NLM Bylaws are silent as to what constitutes an act of the Board.[8] However, under Idaho Code section 30-3-78, an act of the board occurs when a quorum is present and the majority of directors vote in favor of such act. I.C. § 30-3-78(2). A quorum "consists of a majority of directors in office immediately before a meeting begins." I.C. § 30-3-78(1).

According to NLM's annual report filed on June 1, 2010, NLM had three directors, Kemmer, Smith, and Dolph.[9] As noted earlier, there is no evidence that Kemmer or Dolph resigned or were removed from the Board prior to August 1, 2010. Therefore, the special meeting on August 1, 2010, could not be convened "on call of [NLM's] board" without the vote of at least two of those three directors. Here, Smith, acting on her own, called the August 1, 2010 special meeting. Accordingly, the August 1, 2010 meeting was not called by the majority of directors in office and therefore was improperly called. *See* I.C. § 30-3-47(1)(a) (noting that a special meeting may be called by the board); I.C. § 30-3-78(1)–(2) (requiring the majority vote of a quorum before the board can act). The district court's finding that Smith was authorized to

---

[8] The NLM Bylaws only set out what constitutes an "act of the full membership." Under that definition, an act requires a majority vote "of the voting membership present at a meeting at which a quorum is present." And a quorum is "a two thirds (2/3) majority of the voting membership." The voting membership of the Board would be Smith, Kemmer, and Dolph. Thus, a minimum of two votes (2/3 of the voting membership) would still be required and Smith's unilateral action still could not be considered an act of the Board.

[9] According to the NLM Bylaws, the senior pastor/president is also arguably a director. However, the annual report did not list a senior pastor/president and, as discussed above, Newman was not properly appointed. Thus, as of June 1, 2010, Kemmer, Dolph, and Smith were the only directors.

call the August 1, 2010 special meeting is reversed. Consequently, any action taken at the August 1, 2010 special meeting, including the election of new directors, was void. *Glahe v. Arnett*, 38 Idaho 736, 741, 225 P. 796, 798 (1924). ("[T]he call was therefore ineffective and void, thus rendering the meeting, the election of directors, and the election of secretary and treasurer invalid.").

**C. Attorney Fees on Appeal.**

Respondents request attorney fees and costs on appeal under Idaho Code section 12-121. Under Idaho Code section 12-121, fees are only available to the prevailing party. Respondents are not the prevailing party and therefore are not entitled to fees. *Kirk v. Wescott*, 160 Idaho 893, 903, 382 P.3d 342, 352 (2016) ("[Respondent] did not prevail on appeal and is not entitled to attorney fees under section 12-121.").

## IV.   CONCLUSION

The decision of the district court is reversed. We award costs on appeal to appellants, but no attorney fees.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**